(No. 42802, 42803.—

FRANCIS L. MOORE *et al.,* Appellees, *vs.* JEWEL TEA COMPANY *et al.*—(DRACKETT PRODUCTS COMPANY *et al.,* Appellants.)

*Opinion filed September 29, 1970.*

WILDMAN, HARROLD, ALLEN & DIXON, and JON R. WALTZ, both of Chicago, (MAX WILDMAN, HAROLD W. HUFF, and HOWARD T. BRINTON, of counsel,) for appellants.

JAMES A. DOOLEY, of Chicago, for appellees.

Mr. JUSTICE CULBERTSON delivered the opinion of the court:

On November 22, 1959, Frances L. Moore sustained loss of sight in both eyes as the result of the explosion of a can of Drano, a product used to open clogged drains, which she had purchased the day before at a Jewel Tea store. Joined by her husband, Donald G. Moore, whose cause of action arose out of the marital relationship, she subsequently brought suit for damages against Jewel Tea; Heekin Can Company, manufacturer of the container; The Drackett Company (Drackett), the manufacturer of Drano; and The Drackett Products Company (Products), the latter, as admitted in the joint answer of the two companies to the complaint on which the cause was tried, being a wholly owned subsidiary of Drackett through which its products were sold. After an extended trial, judgment was entered against Drackett and Products on jury verdicts which awarded $900,000 in compensatory damages to Mrs. Moore, $20,000 to Donald G. Moore, and an additional $10,000 in punitive damages to Mrs. Moore. By other verdicts, defendants Jewel Tea and Heekin Can were found not liable. On separate appeals by Drackett and Products to the appellate court, in whose opinion the facts and circumstances of trial may be found in greater detail, the judgment was affirmed. (*Moore* v. *Jewel Tea Co.*, 116 Ill. App. 2d 109.) We have granted and consolidated separate petitions for leave to appeal to this court largely to con-

sider attacks of defendants which center on the opinion of the appellate court.

It may be said at the outset that we are in basic accord with the trial and appellate courts insofar as they found and concluded: That the evidence was sufficient to support the verdicts against these defendants; that the cause was, despite the separate appeals, litigated as if the Drackett companies were a single entity; that the theory of *res ipsa loquitur* was properly submitted to the jury; and that it was proper to permit plaintiffs' allegations of wilful and wanton conduct to remain in the case. Further, unless otherwise treated upon herein, we find no reason to disagree with the appellate court's disposition of errors claimed to have occurred in respect to the admission or refusal of evidence by the trial court, or with its determination that the argument of plaintiffs' counsel did not exceed the bounds of propriety. As to such matters we see no useful purpose or compelling necessity which would justify a repetition of the facts, authorities and judicial reasoning which support the judgment of the appellate court. Accordingly, we shall confine ourselves principally to those issues which defendants advance as "arising primarily from the decision of the Appellate Court."

We are first met by contentions of Drackett, accompanied by assertions that the appellate court ignored and misconstrued the record, that plaintiffs' actions against it were barred by the two-year statute of limitations applicable to the commencement of damage actions for injury to the person. (Ill. Rev. Stat. 1965, ch. 83, par. 15.) In this regard, the record shows that plaintiffs filed a second amended complaint within the statutory period wherein only Jewel Tea and Products were named as defendants. This complaint alleged that Products manufactured and distributed for sale the product known as Drano, and these allegations were admitted in the answer of Products by its failure to deny. (See: Ill. Rev. Stat. 1959, ch. 110, par.

40(2).) Still within the statutory period, plaintiffs filed a third amended complaint, adding Heekin Can as a defendant, and repeated its allegations that Drano was manufactured and distributed for sale by Products; however, after the period of limitations expired, Products filed an answer denying these allegations it had previously admitted. With the pleadings in this state, plaintiffs then filed a fourth amended complaint naming Drackett as an additional defendant and alleging that Drackett "and/or" Products manufactured and sold Drano. Pleading only the statute, Drackett presented a motion that the cause be dismissed as to it; however, the motion was denied after hearing and Drackett ordered to answer. Whether or not the motion was heard on its merits cannot be determined from the excerpts of record filed here; but, in any event, Drackett thereafter pleaded the statute as an affirmative defense in its answer and continued to do so in its answer to a fifth amended complaint subsequently filed. (See: Ill. Rev. Stat. 1963, ch. 110, pars. 48(3) and (4).) Inconsistently, however, as shall later be detailed, it permitted the cause to be tried and submitted to the jury as if it and Products were a single entity.

Plaintiffs contend, and the appellate court so held, that the issue of limitations is not open to review due to the failure of Drackett to raise the matter in its post-trial motion. The appellate court considered this contention and held that the limitations issue had not been preserved for review. However, in spite of this holding, that court went on to decide the merits of the limitation defense and ruled that the Statute of Limitations was not a bar to the action against Drackett. In this posture of the appeal, we think it is appropriate to also consider the merits of the defense.

Section 46(4) of the Civil Practice Act. (Ill. Rev. Stat. 1963, ch. 110, par. 46(4)) provides that a cause of action against a person not originally named as a defendant is not bound by lapse of time under certain circumstances. It is unnecessary, in this opinion to set forth the detailed require-

ments of the section, nor the evidence which, in our opinion, brings the case within the section. These details were fully discussed in the opinion of the appellate court. It is sufficient to say that we agree with the finding of the appellate court that Drackett can be deemed to have known from the beginning that plaintiffs were seeking to enforce a claim against it. Under these circumstances, together with the other evidence set forth in the opinion of the appellate court, the Statute of Limitations was not a bar to the action against Drackett. See *Roth* v. *Northern Assurance Co.,* 32 Ill.2d 40, 49.

Count I of the ultimate complaint charged all defendants with strict tort liability for having placed an unsafe and defective product on the market, and, as to such count, one of the plaintiffs' instructions to the jury was as follows: "You are instructed that under Count I of the complaint of Frances L. Moore, any person who sells or manufactures a product or a component part thereof in a defective condition which is unreasonably dangerous to the user or consumer is subject to liability for any physical harm which is proximately caused by such defective or dangerous condition; and this applies without reference to the care used by the seller or manufacturer." As noted, the verdicts of the jury exonerated the defendants Jewel Tea and Heekin Can, but found in favor of plaintiffs against Drackett and Products. It is now contended by the latter defendants, who intemperately charge the appellate court with having deliberately ignored the point, that the finding in favor of Jewel Tea, (the ultimate party in the line of production and marketing through which the product reached Mrs. Moore,) necessarily carries with it a finding in favor of Drackett and Products on the issue of strict liability. Or, to put it another way, they interpret the instruction as telling the jury that all or none of the defendants would be liable under the strict liability count, and assert that since the jury exculpated Jewel

Tea, it must also have exculpated Drackett and Products.

No citation of authority has accompanied this theory and position, either here or in the appellate court (see: *Village of Roxana* v. *Costanzo*, 41 Ill.2d 423, 426; *Hirschfeld* v. *Barrett*, 40 Ill.2d 224, 232; 2 I.L.P., Appeal and Error, § 556), and we also note that it was not advanced as grounds for reversal in the appellate court, but merely as an assumption on the part of these defendants which purportedly gave them justification for limiting their arguments to the issues of negligence and wilful and wanton conduct. But even if it be conceded for the purpose of argument that this theory of defendants finds support in the law and the record, they are not aided thereby. It overlooks that a general verdict was returned against them and erroneously assumes a finding by the jury only on the issue of strict liability. There were, however, three counts in the complaint against these defendants, *viz.*, negligence, strict liability, and wilful and wanton conduct, all of which were submitted to the jury under proper instructions. It is settled law that where several causes of actions are charged and a general verdict results, the verdict will be sustained if there are one or more good causes of action or counts to support it. (*City of Litchfield* v. *Thorworth*, 337 Ill. 469; *Wolford Morris Sales, Inc.* v. *Weiner*, 75 Ill. App. 2d 238; 35 I.L.P., Trial, § 316.) Here, despite contention of defendants to the contrary, there was, as found by the courts below, sufficient evidence to support each count. Furthermore, as aptly pointed out by the appellate court, had these defendants desired to ascertain upon which count or counts the jury returned its verdicts, they could have done so by submitting a separate form of verdict as to each count. (See: Ill. Rev. Stat. 1965, ch. 110, par. 68(3).) Not having done so, they cannot complain or seek to take advantage of their failure. *Smithers* v. *Henriquez*, 368 Ill. 588, 598; *McCarty* v. *Yates and Co.*, 294 Ill. App. 474, 481.

Arguing that the proof shows only that it sold Drano,

defendant Products next contends that there was no evidence of negligence to support the verdict and judgment against it, and charges the appellate court with having "refused" to pass upon the point. While it could again be stated that the general verdict and judgment against this defendant are supported by the proof on other counts, its present contention is totally without merit. Far from refusing to consider the point, the appellate court held that the cause was tried as if Drackett and Products were a single entity, and was manifestly correct in so holding. Up until the time the statute of limitations had run as to Drackett, defendant Products admitted by its pleadings that it both manufactured and sold Drano. Once Drackett was joined as a defendant, their joint answer to the complaint upon which the cause was tried admitted that Drackett manufactured Drano and sold it through Products, a wholly owned subsidiary. Thereafter, and through the trial, Drackett and Products in effect treated themselves as a single entity. Their tendered instructions were labeled "Drackett" and within their context referred to "the defendant Drackett Companies," without distinction between Drackett and Products. At no time during the conference on instructions was there any manifestation that the two companies were not to be treated as an entity, or that the jury was to decide the issues separately as to each company. Rather, both agreed to a form of verdict which asked the jury to determine the liability of "the Drackett Companies." Similarly, in their joint post-trial motion both companies continued to treat themselves as an entity, terming themselves as the Drackett Companies throughout, and presented no complaint which challenged that status. Under these circumstances, we believe there is merit to the claim of plaintiffs that Drackett and Products, having proceeded in the trial court on the theory that they were a single entity, cannot switch to a theory of separate entities on appeal. (See: *Blanchard* v. *Lewis,* 414 Ill. 515; *Nielsen* v. *Duyvejonck,*

94 Ill. App. 2d 224.) But we need not rely upon this principle alone to reject the contention of Products that there was no proof of its negligence.

Apart from the admission in the pleadings that Products is a wholly owned sales subsidiary of Drackett, other portions of the record, more fully detailed in the opinion of the appellate court, reflect that the two companies did business from a common address, had several officers and directors in common, and had a single controller and accounting department. In addition, the can of Drano involved here stated on its label: "Distributed by Drackett Products, Cincinnati, Ohio, U.S.A." Immediately underneath was inscribed: "Manufactured under one or more of the following patents, U.S. Patent No. 2,816,012" *etc.*

Under the latter circumstances of the record we are persuaded by the reasoning and holding of the court in *Bathory* v. *Proctor & Gamble Distributing Co.* (6th cir. 1962), 306 F.2d 22, where, much as Products is indirectly claiming here, the corporate distributing arm (Proctor & Gamble Distributing Co.) of the manufacturer (Proctor & Gamble Co.) of a women's hair product sought to contend that it could not be held liable for the negligence of the manufacturer. After noting the interlocking relationships between the manufacturer and the distributor, comparing favorably to those existing in the present case, the court stated at pages 28-29: "We are of the opinion that the facts recited must be held to deny this defendant the insulation from liability that ordinarily protects a retailer or distributor. Rules of law are founded on reason, and when there is no basis in reason to apply an abstract rule of law to a particular factual situation, that rule will not apply. * * * The product involved here, Pin-It, was not purchased by defendant in the open market. Defendant, itself, was the only market from and through which the manufacturer moved its goods into the channels of trade. Manufacturing is not an end in itself. The process contemplates

that the goods produced will be sold to consumers. Defendant's sole reason for being is to distribute Proctor & Gamble products. It is no more than an arm, the marketing arm, of the overall Proctor & Gamble enterprise. We do not think that one department of a manufacturing and selling enterprise which puts a dangerous product into the channels of trade can escape liability by saying that it did not know what another department of such an integrated operation was doing. This is emphasized by the fact that the operations of both of such departments (although enjoying separate corporate existence) are presided over by the same chief executive. The reasons for the rule protecting a retailer or distributor from liability for negligence under certain circumstances thus do not exist in this case." (See also: *Slavin* v. *Francis H. Leggett & Co.*, 114 N.J.L. 421, 177 Atl. 120; *Burkhart* v. *Armour & Co.*, 115 Conn. 249, 161 Atl. 385. *Cf. Lill* v. *Murphy Door Bed Co.*, 290 Ill. App. 228; *Comm. of State Ins. Fund* v. *City Chemical Co*, 290 N.Y. 64, 48 N.E.2d 262; *Swift & Co.* v. *Hawkins*, 174 Miss. 253, 164 So. 231.) The same conclusion must be reached in the instant case, and we hold that the proof which established the negligence of Drackett was sufficient to support a verdict and judgment against Products on such count.

There was ample evidence to support a verdict against Drackett on the negligence count, much of the proof coming from its own records. Drano is a substance which will generate explosive hydrogen upon contact with moisture, and here there was proof of rust in the interior of the can that exploded, together with expert testimony that the rusting took place before the can exploded. Due to the harmful propensities of the product upon contact with moisture, it was therefore highly essential for a tight closure between the cap and the can in which the product was placed. Yet, for a considerable period before the can in question was filled, loose caps, applied by a machine, had been a problem

and large lumps were found in Drano packaged for shipment, indicating the presence of moisture. Concerning these conditions Drackett's chief of quality control wrote at different times that the loose caps were "probably due to a maladjustment of the capper," that "the need for caution was imperative," and that "serious consideration should be given to maintaining operator control on the line." But these warnings and admonitions went unheeded. Similarly, the jury could properly find from the evidence that Drackett negligently failed to undertake tests to determine the properties of the can it used to withstand pressure or keep out moisture. Instead, the product was placed in a can with a screw-on top without knowing whether, in the event of pressure within the can, the cap would blow off and act as a safety valve or, as occurred in the present case, remain in position while the can itself burst. Not until after the accident here was it determined that a greater pressure was needed to blow the cap off than to burst the seam of the can. Reasonable men would agree, we believe, that ordinary prudence and care would require a testing of a container used to market a product with explosive capabilities.

The next contention of defendants which we find need to consider is directed against Rule 211(c) of this court, (Ill. Rev. Stat. 1969, ch. 110A, par. 211(c),) which was Rule 19—9(3) when the cause was tried. (Ill. Rev. Stat. 1965, ch. 110, par. 101.19—9(3).) So far as pertinent here, subparagraph (c) of the rule provides as follows: "(1) Grounds of objection to the * * * admissibility of testimony which might have been corrected if presented during the taking of the deposition are waived by failure to make them at that time; otherwise objections to the * * * admissibility of testimony may be made when the testimony is offered in evidence. (2) Objections to the form of a question or answer * * * which might be corrected if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition." This

rule, based upon solid common-law antecedents (see: *Illinois Central Railroad Co.* v. *Foulks,* 191 Ill. 57; *Kassing* v. *Mortimer,* 80 Ill. 602; *Toledo, Wabash & Western Railway Co.* v. *Baddeley,* 54 Ill. 19,) is one of long standing and "The test of whether an objection must be made at the time of the taking of a deposition is whether the objection might have been obviated had it been made at that time." (Committee Comments, S.H.A., ch. 110A, § 211, p. 163.) Essentially, it is the contention of defendants that it is "impossible" to apply the rule where deposition testimony is being given by an expert through the medium of hypothetical questions, and that if it does apply, the rule is rendered so vague and uncertain as to offend the requirements of due process of law.

Briefly, the background against which this contention arises discloses that the plaintiffs took the evidence deposition of an expert witness who was given a set of hypothetical facts about a bursting can of Drano, and asked if he had an opinion, based upon a reasonable degree of scientific certainty and his knowledge and experience, as to what could have caused the explosion. None of the facts stated in the hypothetical question made reference to the presence of water in the can or to the uneven distribution of aluminum particles in the Drano but, in explaining his answer, the witness indicated that he considered them to be two of the factors which had contributed to the explosion. No objection was made at the time the deposition was taken, but at the trial the objection was made that the opinion of the witness was inadmissible because he had indulged in two assumptions without evidentiary support. Defendants contend that no objection was necessary at the time of the deposition, that it would have been "nonsensical," on a theory that it could not be known until trial whether or not the plaintiff would supply proof of all the facts stated in the hypotheses. We could perhaps agree if the hypothetical question here had included in its elements the presence of

water and the uneven distribution of aluminum particles and it came to pass that there had been no proof of either element when the deposition was offered in evidence at the trial. But while this is the posture from which defendants obtusely argue, it is not what occurred in this case. Rather, it was in the expert's explanation of his answer to the hypothetical question that he indicated his reliance on the two elements. It is apparent, we believe, that the objections to the admissibility of his testimony could have been obviated by objection properly presented at the time the deposition was being taken. Had objection been thus made, further questions could have been asked by plaintiffs' counsel to ascertain the basis for the reference of the witness to these elements. Under the circumstances, the trial and appellate courts did not misconstrue or misapply Rule 211(c), and neither is it subject to the infirmities the defendants suggest. We are also constrained to remark that the testimony of this witness was cumulative of other expert testimony, and that there was in the record credible evidence from which it could be reasonably inferred that moisture, or water, had found its way into the can and that there was an uneven distribution of aluminum particles.

We have read the record in this case, with particular attention to the proof relating to the issues submitted to the jury, and have studied the briefs by which the cause was submitted to the appellate court as well. It appears to our satisfaction that the judgments of the trial and appellate courts were correct, and we find nothing to sustain the charges of bias which have been leveled at the trial court or the widespread criticism directed at the appellate court. The judgment of the appellate court is affirmed.

*Judgment affirmed.*