JANICE MAZIKOSKE, Conservator of the Estate of Alan Mazikoske, an Incompetent, Plaintiff-Appellant and Cross-Appellee, v. FIRESTONE TIRE & RUBBER COMPANY *et al.*, Defendants-Appellees and Cross-Appellants (General Motors Corporation, Defendant-Appellee).

First District (1st Division)   No. 83—2923

Opinion filed November 3, 1986.

James Thomas Demos Associates and William J. Harte, Ltd., both of Chicago (James T. Demos, William J. Harte, and John B. Austin, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (William J. White, Hugh C. Griffin, Diane I. Jennings, Lawrence R. Sessoms, and Laura L. Ritzman, of counsel), for appellee General Motors Corporation.

Kirkland & Ellis, of Chicago (Francis B. Libbe and John E. Angle, of counsel), for appellee Firestone Tire & Rubber Company.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom, Patrick E. Maloney, Daniel R. Formeller, and Shaun McParland, of counsel), for appellee Kelsey-Hayes Company.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

■ Janice Mazikoske, conservator of the estate of Alan Mazikoske, filed this action against Firestone Tire & Rubber Company (Firestone), Kelsey-Hayes Company (Kelsey-Hayes) and General Motors Corporation (GM) seeking to recover damages for severe personal injuries suffered by Alan Mazikoske when a 16-inch tire manufactured by Firestone exploded as he attempted to mount it onto a 16.5-inch wheel manufactured by Kelsey-Hayes and distributed by GM. Plaintiff alleged, *inter alia*, that the defendants were negligent in that they failed to warn tire mounters that a mismatch danger existed in mounting a 16-inch tire on a 16.5-inch wheel, and, additionally, such failure to warn made their products unreasonable dangerous. A previous suit between the parties, which named additional defendants, ended in a mistrial, and the plaintiff's claims against those additional defendants were subsequently dismissed pursuant to a settlement

agreement. On retrial the jury found in favor of GM and against the plaintiff[1], but it found in favor of the plaintiff and against Firestone and Kelsey-Hayes. The jury additionally found the plaintiff's damages to be $2,661,375 but reduced that figure by 80% to $532,275 because of the plaintiff's contributory negligence. The trial court entered judgment on the verdict, and Mazikoske, Firestone and Kelsey-Hayes all appeal.

The plaintiff contends that she is entitled either to the full amount of damages found by the jury as a matter of law or to a new trial on the issue of comparative fault because it is improper to reduce a strict products liability award on the basis of a plaintiff's contributory negligence or, alternatively, the jury's finding of 80% contributory negligence is against the manifest weight of the evidence. Also in support of her contention, the plaintiff claims the trial court committed the following errors: (1) improperly instructed the jury that the plaintiff was required to prove that the defendants knew or should have known of the mismatch danger, which made their products unreasonably dangerous; (2) improperly excluded evidence of post-occurrence accidents similar to Alan Mazikoske's; (3) improperly admitted certain trade publications into evidence; (4) improperly limited consideration of evidence of post-occurrence warnings, labels, and stampings to issue of their feasibility at the time of the accident; (5) improperly refused to limit consideration of evidence of defendants' compliance with industry standards to the negligence count; and (6) improperly refused to instruct the jury that defendants had the duty to sell a product that was not unreasonably dangerous and that use of care in the manufacturing process was not a defense.

Kelsey-Hayes and Firestone make the following contentions in their cross-appeals: (1) they had no duty to warn about the possible mismatch as a matter of law; (2) the plaintiff failed to present evidence demonstrating that they knew or should have known of the

---

[1]The plaintiff's notice of appeal also included an appeal from the jury verdict in favor of GM and the judgment entered on that verdict. GM did file a brief on appeal which argued in support of the jury verdict, but the plaintiff, neither in her appellant's brief nor in her responding brief, raised any issue concerning the judgment in favor of GM. Also, it appears that the complaint only alleged that GM was involved by distributing the 16.5-inch wheel. At oral argument, moreover, counsel for plaintiff did not contest GM's argument, and, in any event, there was no evidence at all introduced of GM's involvement in the distribution of the wheel in the trial. Accordingly, we, also, affirm the judgment in favor of GM by our decision today. We further note that under present law, GM would be subject to dismissal, in any event, by reason of its status as merely a distributor, unless certain circumstances were shown which did not exist here (see Ill. Rev. Stat. 1985, ch. 110, par. 2—615).

mismatch potential prior to Alan Mazikoske's accident; and (3) the plaintiff's claim against Kelsey-Hayes is time barred because the statute of limitations had run.

We affirm.

The only evidence introduced at trial regarding the events leading up to this tragic accident were the evidence depositions of George and Evelyn Lepper. Those depositions, which were read before the jury, indicated that, in early June 1971, George Lepper called his nephew-in-law, Chuck Gregory, at Gibson Chevrolet about acquiring a spare tire for his used 1969 Chevy three-quarter-ton pickup truck. George Lepper had purchased the truck at another dealership, which did not provide him with an owner's manual. The nephew said that he had a wheel but no tire. Gregory apparently selected the wheel solely on the basis of the truck's description and did not ask George what size wheel he needed. George picked up the wheel the following day. The size of the black-single-piece wheel was 16.5 by 6.75 inches, *i.e.*, it had a 16.5-inch diameter and a 6.75-inch width. George put the wheel into the trunk of his wife's car, gave her a slip of paper on which he wrote the size tire he wanted, and asked her to a buy a tire. George said he got the tire size by reading the sidewall of one of the tires then on his truck.

Evelyn Lepper called a friend, David Dunnett, who worked at Sims Motor Freight and asked him where she could get a tire. Dunnett telephoned Evelyn later that day and told her a tire would be waiting at a Firestone warehouse located near 79th Street and Western Avenue in Chicago. When Evelyn arrived at the warehouse, a Firestone employee got a 7.5-by-16-inch tube-type tire and put it into the trunk of her car where the wheel was. The tire had a 7.5-inch width, but, unlike the Kelsey-Hayes wheel, it had a 16-inch diameter. The tire required an inner tube, which the warehouse did not have, so Evelyn went to another Firestone establishment and purchased a tube. Evelyn took the wheel, the tire, and the tube to a service station owned and operated by Alan Mazikoske and asked if Alan could mount the tire for her husband. Alan said he could do it and said George could pick it up later that evening.

Alan was mounting George's tire when George arrived that evening. In his deposition, George stated that the tire was on the floor and that Alan was bent over the tire. George said that Alan was not using a tire-mounting machine, located a few feet away from where he was working, nor did he restrain the tire in any other fashion. George said that Alan was hitting the tire with a mallet in an apparent attempt to knock approximately 6 to 10 inches of tire bead into

the wheel. George asked Alan how much air he had in the tire, and Alan responded, "Eighty pounds." George said he stepped back a few feet and told Alan that was too much air. George stated that Alan began to introduce more air into the tire, and said, "Maybe it will snap in." George said that Alan was not using a remote air chuck, a device that would permit a tire mounter to stand back during the inflation process. George said the tire exploded shortly thereafter and struck Alan in the face.

As part of her case in chief, plaintiff called Lawrence Lehr, Paul Graney, and Douglas MacIntyre to testify, pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1102). Graney was senior design engineer for GM, MacIntyre was chief wheel engineer for Kelsey-Hayes, and Lehr was field engineering manager for Firestone.

Their testimony showed that 16.5-inch diameter wheels and tires first became available for GM trucks as optional equipment in 1968 and as standard equipment in 1969. MacIntyre testified that this new size was designed in part for three-quarter-ton trucks that were using 16- or 17.5-inch wheels. MacIntyre also stated that, during the five years preceding the accident giving rise to this lawsuit, it was physically impossible to mount a smaller tire on a larger wheel; it would break the tire bead and ruin the tire. Both Graney and MacIntyre admitted that the wheel flanges on the 16.5-inch wheel were smaller than the flanges on the 16-inch wheel, and MacIntyre stated, after comparing samples of the two sizes during trial, that the flanges on both wheels "match[ed]." Graney testified that GM did not consider the possibility of a mismatch because the 16-inch tire was a tube tire that was used on a two-piece rim and the 16.5-inch tire was tubeless and was used on a single-piece rim. However, Lehr testified that both single-piece and multi-piece wheel designs existed for 16-inch tires prior to 1971, and, even though the 16.5-inch wheel was designed for use with tubeless tires, it could accommodate a tube-type tire. Additionally, Lehr stated that, during the development of the 16.5-inch tire at Firestone, he was aware that one could fit the beads of a 16-inch tire over the flanges of a 16.5-inch single-piece wheel and that a tire mounter could inadvertently put a 16-inch tire on a 16.5-inch wheel.

The mismatching of wheel and tire diameters created a danger that was known and recognized in the industry, i.e., "bead hang up." MacIntyre described bead hang up as where the tire beads get stuck in the drop-center portion (wheel well) of a single-piece wheel during the mounting process. Bead hang up existed prior to the introduction of the 16.5-inch wheel, and it was caused by factors other than diame-

ter mismatch, *e.g.*, bead hang up could occur with a single-piece wheel that was either rusted or bent. Other known and recognized dangers associated with tire mounting were overinflation and the mismatching of parts from multipiece wheels. Lehr stated that Firestone warned of the danger associated with bead hang up since, if a tire mounter continued to inflate the tire with bead hang up without first correcting the situation, the tire could explode with fatal results. Likewise, a tire could explode if overinflated, or a mismatched ring from a multipiece wheel could suddenly fly off during the inflation process, both with results similar to the bead-hang-up situation.

The plaintiff also introduced into evidence a manual entitled Atlas Service Guide, Tire and Batteries, published by Atlas Supply Company in 1968 and which was in Alan Mazikoske's possession at the time of his accident. Lehr believed the company to be a division of Standard Oil. The guide listed the operating pressure for the tire involved in the accident at 45 pounds per square inch. Additionally, the guide included advice on how to safely mount tires for use on the size truck involved here. The guide advised that if the beads were not seated at 20 pounds per square inch, the mounter was to deflate the tire, relubricate the tire bead and the wheel rim, and reinflate the tire. The guide also warned the mounter not to stand with his head and shoulders over the tire while inflating it. However, the guide did not include any comments regarding restraining the tire during the mounting procedure, about using a remote clip-on air chuck, or about confirming that the wheel and tire diameters matched.

Additional items were introduced into evidence at trial pertaining to the amount of information available to Alan Mazikoske at the time of his accident. The plaintiff introduced three documents published by the Rubber Manufacturers Association (RMA), which is a trade organization comprised of approximately 10 to 12 domestic tire companies. During the trial, Lehr admitted that Firestone uses the RMA as an arm to disseminate information. RMA does not distribute its materials to the public unsolicited but only does so upon request. There was no evidence that Alan Mazikoske requested materials from RMA or had seen them at any time prior to his accident. The plaintiff introduced a 1968 wall chart, a 1968 guide for passenger car tires, and a 1969 guide for truck tires which were all published by the RMA. These items listed the maximum bead-seating pressure for the accident tire at 40 pounds per square inch. If the beads were not seated at that point, the RMA materials instructed the mounter, similar to the Atlas guide, to deflate, relubricate and reinflate. The RMA also recommended the use of an extension gauge with a clip-on chuck and cau-

tioned the mounter not to stand over the tire while inflating it. The RMA publications did not include any statement that bead hang up could be caused by a mismatch of wheel and tire diameters.

The wheel, tire, and tube involved in this accident were also produced at trial. The tire had its size molded onto the sidewall, the wheel had its size stamped inside the wheel well, and the tube was marked with its size, 7.50-16. Also produced at trial was a tube box in which the accident tube was apparently packaged. However, the tube box was marked 7.50-15, but there was no evidence that the mounting instructions were or would be different. The mounting instructions on the box directed the mounter to inflate the tire until the beads were fully seated.

Alan Mazikoske also testified at trial. Alan Mazikoske stated that he did not remember how the accident occurred. He knew the size of a tire could be found on the sidewall. He knew that the diameters of a wheel and tire had to match, *i.e.*, if the tire was too small, it would not fit on the wheel, and, if the tire was too big, it would not seat or hold any air. He knew that it was dangerous to lean one's body over a tire as you inflated it. He testified that he knew in 1971 that, if too much air was put into a tire, it could explode and kill you; he would use his tire-mounting machine for safety reasons.

This was substantially the evidence introduced at trial of the cause in this case.

The appeal centers primarily on the issue of whether Firestone and Kelsey-Hayes had a duty to warn persons who worked in garages and mounted tires of the mismatch potential of the 7.5-by-16-inch tire and 16.5-by-6.75-inch single-piece wheel involved in this case. The defendants also raise this issue in their cross-appeals, and, accordingly, we will address the claims relating to this issue first. Kelsey-Hayes argues that no duty to warn of the possible mismatch existed because Alan Mazikoske knew and appreciated the risks incident to tire mounting. Additionally, it argues that the mismatch here was not the proximate cause of Alan Mazikoske's injuries, but Mazikoske's overinflation of the tire with his failure to use any safety device to protect himself was the true and only cause of the accident. Furthermore, Kelsey-Hayes argues that no evidence was presented at trial to show that it knew or should have known of its product's dangerous propensity which, it asserts, plaintiff was required to prove before it could be held strictly liable for a failure to warn of a danger inherent in its product.

Similarly, Firestone asserts that overinflation was the cause of the accident here, that overinflation was a commonly known and appreci-

ated danger, and that Alan Mazikoske had equal knowledge of that danger. Additionally, Firestone argues that imposition of liability in this case would make it an insurer for all injuries sustained when a tire is overinflated. Therefore, it contends that this court should rule as a matter of law that it had no duty to warn.

The plaintiff argues that Kelsey-Hayes and Firestone were obligated to warn tire mounters of the mismatch potential because, unlike the injured parties in the authorities cited by the defendants, *e.g., Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, and *Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561, the injured party here was not aware of the particular hidden danger, *i.e.*, the mismatch potential. The plaintiff also claims Alan Mazikoske's inadvertent act of mismatching tire and wheel was foreseeable and, therefore, was not an intervening cause which absolved the defendants of liability. Additionally, she claims that some overinflation was foreseeable since the tire was not marked with its maximum pressure and the tube box instructed the tire mounter to inflate the tire until the beads were seated.

██ ▌ █ A plaintiff seeking to impose strict products liability on a manufacturer is required to prove that his or her injury resulted from the unreasonably dangerous condition of the product and that the unreasonably dangerous condition existed when the product left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) A manufacturer's failure to warn of its product's dangerous propensities may make the product unreasonably dangerous and may, therefore, serve as a basis for imposing strict liability in tort. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194; *Mason v. Caterpillar Tractor Co.* (1985), 139 Ill. App. 3d 511, 487 N.E.2d 1043; *Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572; *Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561.) The determination of whether a duty to warn exists is a question of law, not fact (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465), and the purpose of such a warning is to apprise the party of a danger of which he has no knowledge and, thereby, enable him to take appropriate measures to protect himself from that danger (*Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561). Thus, no warning arises when the danger is obvious and generally appreciated. *Mason v. Caterpillar Tractor Co.* (1985), 139 Ill. App. 3d 511, 487 N.E.2d 1043.

The plaintiff in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, was injured when the steel antenna and tower

he was installing came in close proximity to overhead power lines. Electrical current arced from the power lines, traveled through the antenna and tower, and electrocuted the plaintiff. The plaintiff, there, alleged that the antenna and tower were unreasonably dangerous because they were not equipped with labels warning users of the danger of electrical arcing if either product was brought in close proximity to power lines. The supreme court said that the determination of whether a duty to warn exists involves a question of foreseeability, *i.e.*, " 'that which *** is *objectively reasonable* to expect, not merely what might conceivably occur.' (Emphasis in original.)" (62 Ill. 2d 456, 466, 343 N.E.2d 465, quoting *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12-13, 310 N.E.2d 1.) The court in *Genaust* said that it was not objectively reasonable to expect a person, who was aware of the danger of electricity if metal was to contact power lines, to install a metal tower and antenna in close proximity to power lines. Therefore, the court there held that a duty to warn was not required where the possibility of injury resulted from a common propensity of the product which was open and obvious and where the product itself was not defectively designed or manufactured.

Likewise, the court in *Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561, held there was no duty to warn where the plaintiff, a concrete crew laborer with 18 years' experience, was burned when liquid concrete splashed onto his pants and into his work boots. The plaintiff there claimed that the manufacturer failed to sufficiently and adequately warn of the extreme caustic nature of the concrete. The trial court, however, ruled that a duty to warn did not arise, and the appellate court agreed. There, the court said the duty to warn did not arise because the plaintiff had actual knowledge of the caustic nature of wet concrete, which was a matter of common knowledge in the construction industry, and the plaintiff's injury was the result of a common propensity of the product.

Unlike those cases, we find that based on the facts of the case before us it was objectively reasonable to expect that a tire mounter would attempt to mount a 16-inch tire on a 16.5-inch wheel. While the record indicated that it was a generally known fact that tire and wheel diameters must match, a fact that Alan Mazikoske knew, the record also demonstrated that, prior to the introduction of the 16.5-inch wheel involved in this case, the existence of a mismatch was readily apparent. The testimony of Douglas MacIntyre of Kelsey-Hayes revealed that, in the five years preceding this accident, it was physically impossible to mount a smaller tire on a larger wheel, and any attempt would break the tire bead and ruin the tire. While he did

say that in the case of a larger wheel, a single-piece wheel with an extremely deep drop-center well could possibly permit such a mismatch, such an occurrence, he also said, would not be a normal situation. However, any attempt to mount a larger tire on a smaller wheel would result in the tire falling off the wheel, MacIntyre said.

Introduction of the 16.5-inch wheel at issue created a change in the circumstances. The new size wheel with its smaller flanges permitted a mounter to attempt to mount a 16-inch tire on a 16.5-inch wheel without any mismatch being apparent. Furthermore, Firestone's Lehr's testimony showed he was aware in 1966, during the development of the 16.5-inch tire, that the beads of a 16-inch tire could fit over the flanges of a 16.5-inch wheel and, in such a situation, the mounter could never properly seat the beads.

The situation here is similar to that in *Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572, where the court rejected a manufacturer's argument that it had no duty to warn. The plaintiff in *Soto*, a punch-press operator, was injured while cleaning a full-revolution press. After pressing the stop button on the press, the plaintiff began to clean it. However, on this particular model press, after the stop button was pushed, the flywheel would coast to a stop, and, until the flywheel came to rest, the press mechanism could be activated. The plaintiff there was injured when he accidentally triggered the press. The manufacturer argued on appeal that the dangerous propensities of the press were open and obvious because the press made the same noise whether the press was running or the flywheel was coasting and, therefore, there was no duty to warn of the danger. The court disagreed and said that the very fact that the same noise was made while the machine was activated or the flywheel coasted actually made the danger less obvious. Likewise, we think that the situation here involving the fact that a 16-inch tire could be mounted onto the 16.5-inch wheel was similar and made any danger less obvious to the plaintiff.

Moreover, we believe that the situations in *Genaust* and *Huff* are clearly distinguishable from the facts in this case, particularly due to the change in circumstances here that made the mismatch situation even more unexpected by tire mounters because of the prior physical inability in most instances to mismatch wheel and tire diameters. Nothing in *Genaust* misled the plaintiff there concerning the danger of bringing metal objects in close proximity to power lines, nor did anything in *Huff* cause the plaintiff there to believe that the concrete in that case possessed other than its known caustic nature.

■ ■ Accordingly, we hold that, under the circumstances pre-

sented here, Kelsey-Hayes and Firestone had a duty to warn those, such as Alan Mazikoske, who worked in garages and mounted tires about the potential mismatch of the 7.5-by-16-inch tire and 16.5-by-6.75-inch wheel involved in this case. Furthermore, we do not believe imposition of such a duty here makes the defendants absolute insurers, but rather, in any particular case, it is for a jury to determine whether any lack of warning renders a product unreasonably dangerous or a warning, if any, was adequate under the circumstances (see *Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572). Inasmuch as we have decided that the defendants had a duty to warn here, it was for the jury to determine whether the breach of that duty proximately caused Alan Mazikoske's injuries or the extent to which it contributed to them. *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401; see *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665.

■ Additionally, however, Kelsey-Hayes contends that the claim against it here was time barred. It asserts that the plaintiff's cause of action accrued on the date of the accident, June 11, 1971, and it argues that Alan Mazikoske's legal disability, if any, resulting from the accident was removed when the court appointed a conservator of his estate on December 15, 1971. Accordingly, since any legal disability was removed by the appointment of the conservator, Kelsey-Hayes asserts that the tolling provision in section 13—211 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13—211) does not apply to the plaintiff's claim and, inasmuch as the plaintiff did not name Kelsey-Hayes as a defendant in this action until 1980, her claim is barred by the two-year statute of limitations in section 13—202 (Ill. Rev. Stat. 1981, ch. 110, par. 13—202; but see Ill. Rev. Stat. 1981, ch. 110, par. 13—213).

The plaintiff, on the other hand, argues that the language of section 13—211 is clear and unequivocal. She submits that the defendants' argument suggests that the court, in effect, rewrite the section by finding that the appointment of a conservator removed the legal disability of Alan Mazikoske and rendered section 13—211 inapplicable. This, the plaintiff contends, would exceed the boundaries of judicial construction and invade the province of the legislature.

Section 13—211 provides exceptions to the statute of limitations:

"If the person entitled to bring an action, specified in Sections 13—201 through 13—212 of this Act, at the time the cause of action accrued, is under the age of 18 years, *or under legal disability*, or imprisoned on a criminal charge, he or she may bring

the action within 2 years after the disability is removed." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 110, par. 13—211.

The premise of Kelsey-Hayes' argument is that any legal disability was removed when the court appointed Janice Mazikoske as conservator of Alan Mazikoske's estate and person. However, it cites no Illinois authority to support its position. It argues that the purpose of section 13—211 is to protect persons who are incapable of protecting their own interests and also those interests that are not adequately protected by a guardian or conservator. Nevertheless, Kelsey-Hayes says that Alan Mazikoske's interests were being properly protected by his conservator and attorney and, thus, the underlying reason for section 13—211 was not applicable.

We, however, find Kelsey-Hayes' argument unpersuasive. In *Haas v. Westlake Community Hospital* (1980), 82 Ill. App. 3d 347, 402 N.E.2d 883, suit was filed to recover for personal injuries suffered by Thomas Haas at birth. Haas reached the age of 18 in 1975, he was adjudicated incompetent in 1977, and the conservator filed suit in 1978. The trial court dismissed the claim because it found that the specific terminology in the exception to the limitation statute was not applicable. This court reversed and said that, if it could be established that Thomas Haas was under the disability when the cause of action arose, he could not be "held accountable for any apparent delay, negligence, or laches in seeking redress through the courts, and he is not affected by the limitations period in the statute." (82 Ill. App. 3d 347, 349, 402 N.E.2d 883.) Additionally, arguments similar to Kelsey-Hayes' have been rejected with respect to minors' claims where the courts have said that, despite the appointment of a guardian *ad litem*, a minor still had until two years after reaching majority to file suit on a cause of action arising during his or her minority. *Eiseman v. Lerner* (1978), 64 Ill. App. 3d 185, 380 N.E.2d 1033; *In re Estate of Sheehan* (1937), 290 Ill. App. 551, 9 N.E.2d 63.

We believe that the situation here falls within the statutory exceptions to the statute of limitations set forth in section 13—211. Alan Mazikoske was adjudicated an incompetent on December 15, 1971, and the plaintiff also presented the testimony of Jack Arbit, a licensed clinical psychologist, who testified that he examined Alan Mazikoske on December 31, 1981, which established that the injuries sustained in the accident on June 11, 1971, rendered Alan incompetent to manage either his estate or person and such condition was permanent. Accordingly, we find that the plaintiff's claim against Kelsey-Hayes was not barred by the two-year statute of limitations.

■■ ■ Finally, the defendants argue that there was no evidence

presented at trial to show that they knew or should have known of the mismatch danger. However, we believe a review of the testimony of Douglas MacIntyre, chief wheel engineer of Kelsey-Hayes, and Lawrence Lehr, field engineering manager of Firestone, as set forth earlier, clearly establishes the plaintiff's claim that there is sufficient evidence on that issue to support the jury's verdict, and, accordingly, the defendants' argument is without merit.

In the plaintiff's appeal here, as stated previously, she initially contends that she is entitled to recover the full amount of damages as determined by the jury before any setoff occurred, i.e., $2,661,375. The plaintiff asserts that the evidence introduced at trial established Kelsey-Hayes and Firestone were strictly liable as a matter of law. Furthermore, under Illinois law, a strict products liability award cannot be reduced because of a plaintiff's contributory negligence but can only be reduced because a plaintiff assumed the risk or misused the product. Additionally, the plaintiff argues that any misconduct on Alan Mazikoske's part here did not constitute either assumption of risk or product misuse. Thus, she says she is entitled to full judgment in the amount of $2,661,375 or, alternatively, if the court does not agree with this argument, the plaintiff argues that, in any event, the jury's finding that Alan Mazikoske was 80% contributorially negligent is against the manifest weight of the evidence.

In response, the defendants point out that this case went to trial after Illinois adopted the doctrine of comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, but before Illinois determined in *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197, that the only comparative-fault factors applicable in strict liability cases were product misuse and assumption of risk. (See also *Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 483 N.E.2d 1.) Also, the defendants submit that the plaintiff should not be permitted to attack the general verdict returned by the jury on the grounds that the strict liability count was defective since the negligence count was insufficient to sustain the verdict.[2] Notably, the defendants assert,

---

[2]It should be noted that by holding, as we do, that the defendants have a duty to warn, this duty to warn is applicable to both the negligence and strict products liability counts. (See *Jonescue v. Jewel Home Shopping Service* (1973), 16 Ill. App. 3d 339, 343-44, 306 N.E.2d 312; *Weiss v. Rockwell Manufacturing Co.* (1973), 9 Ill. App. 3d 906, 913, 915-17, 293 N.E.2d 375.) Thus, while our discussion of the issue relates primarily to the product liability count, since this is the manner in which the argument on appeal has been presented, our finding of a duty to warn also would apply to the negligence claim and would, of course, also support the jury's general verdict to the extent that the negligence count might be challenged on the basis of this issue.

the plaintiff makes no claim that the negligence count could not sustain the verdict. Furthermore, the defendants argue, the plaintiff made a tactical decision to submit jury instructions and general verdict forms that permitted the jury to reduce any award, whether based on negligence or strict products liability claims, by the percentage of comparative negligence or fault attributable to Alan Mazikoske in order to avoid the law in effect at that time, which was pre-*Coney*, which provided that assumption of risk or misuse of the product was a total bar to recovery. Under such circumstances, the defendants contend that the plaintiff must be held to have waived any claim that she was entitled to any other theory of reduction on the strict products liability count or that the jury was improperly instructed on the products liability count.

We agree with the defendants and reject the plaintiff's argument and find that the case was properly submitted to the jury. The situation in *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817, is analogous to the present case. In both the *Auton* case and the instant case, the parties went to trial before the supreme court's decision in *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197. The plaintiff's decedent in *Auton* was crushed by a road scraper while working on a road improvement project. The plaintiff there filed suit against the manufacturer based on strict products liability and alleged that the equipment was unreasonably dangerous because of defective electrical design and inadequate rearview mirrors. The jury was instructed that if it found that the decedent had assumed the risk of working with or near the equipment it would be a complete bar to recovery. On appeal the plaintiff in *Auton* argued, as the plaintiff argues here, that the subsequent supreme court decision in *Coney* should apply to her case retroactively and that, therefore, the trial court's instruction to the jury that assumption of risk was a complete defense to the action was erroneous. The supreme court in *Auton*, however, affirmed the judgment below for the manufacturer and said the plaintiff's contention on appeal that comparative-fault principles should apply to her case was inconsistent with her position in the trial court, where she argued against any application of comparative negligence and, thus, could not be raised on appeal. Further, the court found that the plaintiff, by failing to tender an instruction permitting assumption of risk to be a damage reducing factor, waived her right to contend that such was the proper instruction.

■ We, likewise, find that the plaintiff's contention here that the trial court erred by instructing the jury that a strict liability judgment could be reduced by the percentage of Alan Mazikoske's contributory

negligence or fault is inconsistent with the position she maintained in the trial court. During the instructions conference, the plaintiff tendered her issues instruction, which was given by the court over the objections of the defense. Initially, the instructions tendered by the plaintiff made no reference to any affirmative defense because, as she claimed, there was no evidence to support such a theory. However, the plaintiff suggested during the instructions conference, if the court did not agree with that claim, that the court follow the decision in *Daly v. General Motors Corp.* (1978), 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380, where the California court extended a full system of comparative fault to strict products liability cases. The trial court accepted the plaintiff's suggestion and indicated that it would apply comparative-fault principles to both counts. Furthermore, the plaintiff, consistent with the theory she had suggested, never presented the trial judge with any other instruction that would have permitted the jury to consider only Alan Mazikoske's assumption of risk or product misuse as a damage-reducing factor. We, therefore, find that the plaintiff here, as the court in *Auton* found the plaintiff there, has waived any such error and cannot now raise the issue on appeal.

Plaintiff's argument also overlooks the fact that the jury here returned a general verdict. The general verdict form was tendered by the plaintiff, and it failed to include any special interrogatory which would disclose whether the verdict was returned on the negligence count, the products liability count, or both counts. Furthermore, if the plaintiff desired, she could have requested separate findings for each count under section 2—1201(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1201(c)), but she failed to do so. We also note that the issues instruction tendered by the plaintiff and given to the jury alleged an additional negligent act besides failure to warn, which was the basis of her strict products liability claim, *i.e.*, she alleged that Firestone and Kelsey-Hayes were negligent for introducing a tire and wheel into the light-truck market without conducting a mounting-safety analysis. Under such circumstances, to accept the plaintiff's argument that the jury's verdict could not be reduced because the defendants were strictly liable as a matter of law would require this court to speculate that the basis of the jury's favorable verdict was the products liability count only. This we will not do. "It is settled law that where several causes of actions are charged and a general verdict results, the verdict will be sustained if there are one or more good causes of action or counts to support it." *Moore v. Jewel Tea Co.* (1970), 46 Ill. 2d 288, 294, 263 N.E.2d 103.

Next, we turn to the plaintiff's alternate argument that the

jury's finding Alan Mazikoske 80% contributorially negligent is against the manifest weight of the evidence. A jury's verdict assessing a plaintiff's degree of contributory negligence will not be set aside unless it is against the manifest weight of the evidence. (*Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 466 N.E.2d 1064.) A verdict will not be set aside because a court of review would have decided differently if it had been the trier of fact. (*Turner v. Chicago Transit Authority* (1984), 122 Ill. App. 3d 419, 461 N.E.2d 551.) Nevertheless, a court of review will not hesitate to reverse a jury's verdict where it is palpably erroneous or a contrary conclusion is clearly evident (*Gabrenas v. R. D. Werner Co.* (1983), 116 Ill. App. 3d 276, 451 N.E.2d 1307), or where it is clearly the result of passion or prejudice or it appears arbitrary, unreasonable, and not based upon the evidence (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 476 N.E.2d 1232).

■■ We have examined the record before us and find that the jury's verdict is not against the manifest weight of the evidence. The jury was presented with the testimony of Alan Mazikoske, who testified that he knew that wheel and tire diameters must match, he knew a tire could explode if too much air was put into it, he knew it was dangerous to lean one's body over a tire as you put air into it, and he normally used his tire-mounting machine as a safety precaution.[3] The jury also heard the deposition testimony of George Lepper, and, according to Lepper, Alan did not use his tire-mounting machine or attempt to restrain Lepper's tire in any fashion. Lepper also stated that Alan did not use a remote clip-on air chuck, positioned his head and shoulders over the tire, and introduced more than 80 pounds per square inch of air into the tire, an amount far in excess of the suggested maximum pressure, before it exploded. Therefore, on the basis of this evidence, we cannot say that the jury's finding that Alan Mazikoske was 80% contributorially negligent is arbitrary, unreasonable or contrary to the manifest weight of the evidence. See *Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 476 N.E.2d 1232 (jury verdict assessing 95% to plaintiff held not against the manifest weight of the evidence).

Finally, the plaintiff contends that the trial court made several evidentiary errors and raises the additional claim that the trial court improperly instructed the jury in this case. However, by reason of the

---

[3]While Alan Mazikoske had been declared legally incompetent after his accident, he gave deposition testimony on two different occasions and testified at the earlier trial of this matter that resulted in a hung jury. No issue has been raised by either party concerning the propriety of Mazikoske's testimony.

fact that the plaintiff prevailed in his claim to the jury and also by reason of our resolution of the other issues raised herein, we find it unnecessary to consider these other contentions the plaintiff has raised.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and BILANDIC, JJ., concur.