H. W. Rouse, Administrator of the Estate of Louise A. Rouse, Deceased, Appellee, v. George P. Tomasek, Appellant.

Gen. No. 37,365.

WILSON, J., dissenting.

Opinion filed April 10, 1935.

MILLER, GORHAM, WALES & ADAMS, of Chicago, for appellant.

JOHN A. BLOOMINGSTON, of Chicago, for appellee.

MR. JUSTICE HALL delivered the opinion of the court. By this appeal, defendant seeks the reversal of a judgment of the circuit court of Cook county against

him and in favor of plaintiff for the sum of $4,000 and costs of suit. The action is brought by plaintiff as administrator of the estate of Louise A. Rouse, deceased, and is based upon the charge that decedent's death was caused by the negligence of defendant in the operation of an automobile. Plaintiff was the husband of decedent. The trial was by jury. The declaration filed contained six counts. The first count charges that defendant carelessly and negligently operated his automobile so that it struck the intestate. The second count charges that defendant drove the car with reckless and conscious indifference, and that he wilfully and wantonly injured the intestate. The third count charges that defendant drove with a speed greater than was reasonable. The fourth count charges that defendant drove at a greater rate of speed than 15 miles per hour through a business district of Chicago. The fifth count charges that he drove at a greater rate of speed than 20 miles per hour through a residential district of Chicago, and the sixth count that he drove the car without reasonable precaution, and without stopping upon the approach of a person walking on a public highway.

James Rooney, a witness produced by plaintiff, testified to the effect that the accident, which resulted in the death of decedent, occurred at about 11 o'clock on the night of January 14, 1932; that at the time in question, it was raining and cloudy; that at that time he was going northwest on South Chicago avenue, near 76th street, in the City of Chicago; that 76th street runs east and west, and South Chicago avenue runs northwest and southeast, and the streets intersect each other; that he first saw Louise Rouse standing on the north side of 76th street on the west side of South Chicago avenue; that she was then standing at the regular crossing place where people step from the sidewalk to cross the street; that at that time, the witness started to cross from the southwest corner of the two intersecting streets, and that he started to walk on an angle

when Mrs. Rouse stepped off the curb going east at the crosswalk; that he then heard the screech of a human voice and that he then saw a Ford coupé going north on South Chicago avenue; that the car dropped a woman about in the middle of the car track; that the automobile went almost to Kimbark avenue; that the man in the Ford turned around, came back, and picked up the woman and put her in his car; that the first he saw of the accident was when he saw the woman falling between the north and south street car tracks of South Chicago avenue, and that this was after he saw her standing on the corner; that she fell about 35 feet northwest of 76th street; that it was then raining and dark, but that there was sufficient light for the witness to see the woman; that he had no trouble in seeing either the woman or the automobile, and that the car went down the street quite a way and came back.

Plaintiff produced other witnesses who heard the decedent scream, and saw her picked up and put in defendant's car after she was struck, but none of these witnesses saw the actual occurrence upon which the action is based. One witness testified to an approximate distance which the automobile ran after the accident.

Harry W. Rouse, plaintiff, testified as a witness on his own behalf. After he had been sworn, the following proceedings were had as shown by the abstract. He testified that:

"I am the administrator and husband of the deceased, Mrs. Louise A. Rouse. During the thirty years I lived with her I had an opportunity to observe her while crossing streets in the city.

"Q. What is the fact as to whether or not, as you did observe her during the course of these thirty years, that she appeared to be a careful person?

"Mr. Adams: Object, if the court please. The testator is not an eyewitness.

"Mr. Bloomingston: Let's find out who the eyewitness is he is going to interrogate.

"Mr. Adams: George Tomasek.

"Mr. Bloomingston: If the defendant is here, he is not a competent eyewitness. Is the only eyewitness the defendant?

"Mr. Adams: Yes.

"Mr. Bloomingston: Then I contend that Mr. Tomasek is not a competent witness. May I proceed, your Honor?

"The Court: Yes, objection overruled.

"Q. What is the fact as to whether or not in her activities in crossing the street, street car tracks and where automobiles were driving, whether or not she appeared to be a careful person? A. She was very careful.

"Cross-Examination by Mr. Adams.

"I was not present at the scene of the accident. I don't know of my own knowledge what she did on that particular night at that intersection. I don't know whether she walked or ran. I don't know whether she walked or ran into the side of the car or in front of the car. I don't know whether she looked to the right or to the left either before starting to cross or out in the middle of the street."

Defendant was then called as a witness in his own behalf. Objection was made to his giving any testimony at all. He was asked this question by his counsel: "Q. Calling your attention to defendant's Exhibit 1, do you know what this is?" Objection to this question was made by counsel for plaintiff on the ground that the defendant was not a competent witness, and the objection was sustained. After this the following occurred: "Question (by defendant's counsel): "When was this picture taken?" Objection sustained. "Q. Was that taken before or after the night of January 14th, 1932?"

Objection sustained. The record shows that the parties then retired to the judge's chambers, and the following occurred:

"Mr. Adams (for defendant): First, I offer and propose to prove that this defendant in accordance with, or on the principle I just spoke of,—I claim he is competent to testify to the whole thing, and as to how, I offer to prove the manner in which the accident occurred. He was traveling in a northwesterly direction at a proper rate of speed, on the night in question; that there was a street car stopped, southbound on South Chicago avenue, stopped on the north side of 76th street, with its front end near 76th street; that as he came up to the street car, the street car was starting up and as he got a little back of the rear end, the plaintiff's intestate in this case came into the sight of his car, hit the glass in the left hand door of his car, breaking it; that no part of the plaintiff came in contact with the front of his car; that she was not in front of his car, and that his bumper and fender was not hit; that the only part of his car that was touched by her was the left hand door; that he did not see her; that he did not swerve; that he was going in a direct line of South Chicago avenue which was in a northwesterly direction, in or about the northwest bound car track on his own proper side of the street.

"The other thing I wish to show by this witness is based upon the premises I spoke about; that he is competent to testify to everything. I offer to show that these two pictures, Defendant's Exhibits 1 and 2 were taken, I think, the day after the accident. That would be the 15.

"The Court: January 14th is when it happened.

"Mr. Adams: The day after the accident would be the 15th, January 15th, 1932; and that these pictures truly represent the condition of his car after the accident. I offer to show that his car was in good condi-

tion; that the glass was not broken before the accident. This is the condition of the car right after the accident.

"Mr. Bloomingston: I object to that.

The Court: The plaintiff objects and the court sustains the objection.

"Mr. Adams: The defendant rests."

By an "Act in regard to evidence and depositions in civil cases," Cahill's Illinois Revised Statutes, 1931, chapter 51, ¶¶ 1–3, it is provided:

"1. That no person shall be disqualified as a witness in any civil action, suit or proceeding, except as hereinafter stated, by reason of his or her interest in the event thereof as a party, or otherwise . . . .

"2. No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues . . . as administrator . . . of any deceased person . . . unless when called as a witness by such adverse party so suing . . . and also except in the following cases, namely:

"3. Where, in any such action, suit or proceeding, any such party suing, . . . as aforesaid, or any person having a direct interest in the event of such action, suit or proceeding, shall testify in behalf of such party so suing or defending to any . . . transaction with the opposite party or party in interest, then such opposite party or party in interest shall also be permitted to testify as to the . . . transaction." The general purpose of this statute is to prevent the living party to a transaction from testifying, because the other party being dead, cannot be produced to contradict in case of false swearing. Denial of the right to the living person is supposed to put them on an equality.

Counsel for defendant insists that in view of the fact that there was an eyewitness to the occurrence in the person of the defendant, the court erred in admitting

testimony as to decedent's habits; that there was no evidence that decedent was in the exercise of due care at the time and place of the accident; that the court erred in excluding defendant's testimony after admitting the testimony of plaintiff as to decedent's habits, and that the court erred in excluding defendant's testimony as to certain photographs of the automobile involved in the accident, said to have been taken shortly after the accident had happened.

*Van Meter v. Goldfarb,* 317 Ill. 620, was similar in many respects to the instant case. In that case, a boy was killed by the defendant, who was driving an automobile through an alley. In the trial of the cause, a brother of the boy who was killed, as a witness for plaintiff, was permitted to testify as to the occurrence. The defendant, Goldfarb, was then permitted by the trial court to testify in his own behalf, and the question presented to the Supreme Court was whether or not the trial court 'erred in permitting the defendant to testify. In deciding the case, the Supreme Court said:

''The right of action created by the Injuries Act is not one for the benefit of the estate of the deceased but is one for the benefit of his next of kin, who is the real party in interest. Harold, the brother who testified, is one of the 'persons having a direct interest in the event of' this action, and he testified in behalf of the party bringing the action, giving his version of the accident out of which the action arose. If this accident is a 'transaction' between the deceased and appellee, within the meaning of the statute under consideration, 'then such opposite party or party in interest (appellee) shall also be permitted to testify as to the same . . . transaction.' *Plain v. Roth,* 107 Ill. 588.

''The purpose of sections 1 and 2 of the Evidence Act is to emancipate the parties as witnesses. Such statutes were not designed to restrict the admissibility of evidence but were intended to enlarge the compe-

tency of witnesses, so that, with the statutory exceptions, all persons might testify in an action. The purpose of the exception in favor of one suing as administrator in statutes removing the incompetency of parties as witnesses is to guard against the temptation to give false testimony in regard to the transaction in question on the part of the surviving party and to put the two parties to a suit upon terms of equality in regard to the opportunity of giving testimony. (4 Jones' Commentaries on Evidence, sec. 773.) The sources of original information on the part of the representative of the deceased person are so inadequate, as compared with those of the surviving party, that the law-makers assume the representative to be utterly unable to testify as to the details of the transaction, and therefore they exclude the adverse party. The principal reason for the statutory exception is the supposed inability of the representative to oppose the statements of the adversary, but that reason is not applicable to a case like the one before us. Here the next of kin, the real party in interest, was an occurrence witness and gave his version of it. Manifestly it would be in direct violation of the purpose of the exception to bar the opposite party from giving his version of the occurrence. We are of the opinion that the word 'transaction' as used in the statute, is used in a broad sense, and that it includes an occurrence like the one out of which this action arises.'' See also *Reget v. Bell,* 77 Ill. 593; *Petro v. Hines,* 299 I1. 236; and *Minns v. Crossman,* 193 N. Y. S. 714, 118 Misc. 70.

In the case at bar, before plaintiff could recover, it was necessary that he establish the fact that the decedent was in the exercise of due and ordinary care for her safety at the time of the accident. His testimony established the presumption that she was. The plaintiff, as the record indicates, will be the beneficiary in case a recovery is had here, and in view of the authorities, we are brought to the conclusion that he is a ''per-

son having a direct interest in the event of such transaction''; that having testified in his own behalf as to decedent's careful habits, he thereby made defendant's proffered testimony as to decedent's conduct at the time of the accident, relevant, material and proper for the purpose of rebutting this presumption. The court erred in rejecting the proffered testimony of the defendant with reference thereto. The judgment is, therefore, reversed and the cause remanded.

*Reversed and remanded.*

HEBEL, P. J., concurs.
WILSON, J., dissents.