NORMA JEAN GOAD, As Adm'r of the Estate of Steven William Goad, Deceased, Plaintiff-Appellee, v. JOHN E. EVANS, d/b/a Korner Tavern, Defendant (William O. Cole, Jr., Defendant-Appellant).

Fourth District   No. 4—88—0112

Opinion filed November 30, 1989.

Stephen R. Ryan, of Ryan, Cini & Bennett, of Mattoon, for appellant.

M. John Hefner, Jr., of Harlan Heller, Ltd., of Mattoon, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

· This is an appeal from a judgment entered in favor of the plaintiff in a wrongful death action. The plaintiff, Norma Jean Goad (Goad), administrator of the estate of decedent Steven William Goad (Steven), claimed damages on the basis of the death of Steven in a one-car accident, which occurred during the early morning hours of July 7, 1987. Named as defendants in Goad's suit were John E. Evans, d/b/a Korner Tavern (Evans), and William O. Cole, Jr. (Cole). The record reflects Goad's claims against Evans have been settled, and only Goad's claims against Cole are at issue in this appeal. We affirm the judgment which the circuit court entered on a jury verdict in favor of Goad and against Cole.

Counts II and IV of Goad's first-amended complaint are premised on a theory of negligent entrustment and allege Cole acted negligently in that he entrusted a motor vehicle to Steven, when in the exercise of ordinary care he should have known Steven was, by virtue of his intoxication, unable to operate the vehicle in a safe and responsible manner. Counts III and V allege, in the alternative, Cole negligently operated a motor vehicle in which Steven was a passenger.

In an answer filed November 15, 1985, Cole denied the salient allegations of counts II through V. Cole also filed affirmative defenses alleging Steven's contributory negligence was the proximate cause of his death. On October 23, 1987, Cole requested leave to file further affirmative defenses based on the doctrine of assumption of risk. The

circuit court denied this request.

The relevant facts as developed by the testimony presented at the jury trial of this cause held on October 26 through 29, 1987, are largely undisputed; therefore, the evidence may be briefly summarized. At approximately 5:30 p.m., on July 6, 1987, Cole (then aged 16 and a licensed driver), Steven (then aged 15 and not a licensed driver), and Carol Bridges, Steven's girlfriend, traveled from Windsor to Mattoon in a car owned by Cole's father, who had authorized Cole to use the car on that evening. After driving around Mattoon, the three individuals stopped at the Korner Tavern. Steven entered the tavern, purchased a case of beer, and returned to the car with the beer.

At around 11 p.m. on that same evening, Cole and Steven were seen at a tavern in Windsor by Cole's father and mother, as well as by Cole's parents' friend, Dorothy Camic. At that time, Cole requested permission to spend the night at Steven's house, and was given permission to do so. While in close proximity to the two boys, and while conversing with and observing them, neither Cole's parents nor their friend observed anything remarkable, significant, or out of the ordinary with regard to their speech, motor control, or movements.

Shortly thereafter, Cole and Steven encountered and were joined by Mike Giesler in downtown Windsor. These three individuals then drove back to Mattoon in the automobile which Cole's father had authorized Cole to use on that evening. Cole drove for about the first three miles, and Giesler drove the remaining distance to Mattoon. After arriving in Mattoon, Cole, Steven, and Giesler returned to the Korner Tavern at approximately 12 or 12:30 a.m. Steven entered the tavern, purchased another case of beer, and returned to the car with the beer. The three youths then returned to Windsor and subsequently drove around in the countryside surrounding Windsor while drinking the beer. Except for a brief period of time when Cole drove, Giesler drove the car during most of this time. Giesler, Cole, and Steven were in each other's company for approximately three hours before Giesler returned home at about 2 a.m.

Giesler testified that during the brief period of time Cole drove the car, he had trouble keeping it in the middle of the road, which in Giesler's opinion was attributable "to the alcohol." According to Giesler, Cole consumed about eight or nine beers after they left the Korner Tavern. While Giesler was with Cole and Steven on the evening in question, Steven requested to drive the car "up to five" times.

When they arrived at Giesler's house, all three youths got out of

the car. At that time Giesler told the other two occupants of the car to go home, they were drunk, and they should not be driving around. Steven again requested to drive the car as Giesler was walking to the front of his residence. When Giesler entered his house, Steven and Cole were discussing who would drive. Giesler did not know who drove the car away from his house.

Bud and Beulah Welch live in close proximity to the scene of the accident in which Steven was killed and went to the scene immediately after the accident. The accident occurred at the T intersection of two country roads. The vehicle occupied by Cole and Steven was travelling north on a road which ends at a T intersection with an east-west road. The vehicle continued through the intersection without stopping, apparently struck a ditch and a small tree, and came to rest on its driver's side at the north end of the intersection.

Mr. and Mrs. Welch were in Cole's presence until emergency personnel responded to the scene and took Cole to a hospital. During the time Cole was in their presence at the scene of the accident, Mr. and Mrs. Welch observed he was "shookup," distraught, and extremely upset. After Bud Welch got Cole out of Cole's father's vehicle, Cole ran away from the scene of the accident through some bushes and briars, but returned to the road a short time later. Cole then ran away in another direction but again returned to the scene of the accident after a short time. While with Mr. and Mrs. Welch at the scene of the accident, Cole repeatedly made statements to the effect, "I should never have let my best friend drive," and "I tried to get him to let me drive, but he wouldn't let me drive."

Bonnie Carter was one of the emergency medical technicians who went to the scene of the accident involving Cole's father's vehicle. She treated Cole at the scene and also accompanied him to a hospital. She described him as being very distraught, and it appeared as if he was "in another world." While Cole was in Carter's presence, he likewise made statements such as "I shouldn't have let him drive," "He wanted to drive," and "I let him drive." During the period Carter was with Cole on the night of the accident, Cole appeared to drift in and out of consciousness.

David Curry, also a member of the ambulance crew which went to the scene of the accident, stated as a result of the accident, Cole's father's vehicle came to rest on its left driver's side. Steven's body was found in the rear left side of the vehicle, with one of the arms hanging out of a left window and the legs extending up to the front seat. Curry stated that while he was at the scene of the accident, Cole was "very emotionally upset," was crying, and was "very agitated."

Curry heard Cole say two or three times he had killed his best friend. Robert Pierce, also a member of the ambulance crew which responded to the accident, similarly testified he heard Cole say, "I killed my best friend."

Goad admitted Steven was intoxicated at the time of the accident.

Dr. Mary Jones, an emergency room physician at Sarah Bush Lincoln Health Center, testified that on the night Steven was killed, she treated Cole for an injury to his temple above his right ear. At that time, a blood sample was drawn from Cole, which revealed his blood-alcohol content was .14%.

At the conclusion of the trial, the jury returned a general verdict which found for Goad and against Cole and assessed Goad's damages at $220,000. The jury found Steven was 50% negligent and accordingly fixed Goad's recoverable damages at $110,000. Following denial of his post-trial motion, Cole filed a timely notice of appeal.

I

Cole first contends the judgment in Goad's favor should be reversed because Goad at no time presented evidence she had been appointed administrator of Steven's estate. Cole asserts this was an essential element of Goad's case, and she cannot recover in the absence of evidence as to this matter.

Goad maintains Cole waived this contention by failing to object to a jury instruction to the effect Goad was serving as administrator of Steven's estate. Goad also notes Cole did not argue this point in his motion for a directed verdict and raised it for the first time in his post-trial motion. Goad also refers to a portion of the proceedings in which the circuit court was purportedly asked to take judicial notice of the letter of administration appointing Goad administrator of Steven's estate.

In his reply argument, Cole asserts it cannot be said the circuit court took judicial notice of the letter of administration because the record contains no clear indication (1) the court was asked to take judicial notice of the letter or (2) the court was presented with a copy of the letter.

Attached to Goad's initial and first-amended complaint are photocopies of a certified copy of a letter of administration appointing Goad administrator of Steven's estate. At the conclusion of the instructions conference, the following exchange occurred:

"MR. HELLER [Goad's attorney]: *** We want the judge to take judicial notice the [sic] letters testamentary of—make that ***

THE COURT: Do you have a copy on file?

MR. HELLER: There was a copy, I assume, with the Complaint and this is a certified copy.

MR HEFNER: That is the order.

THE COURT: Do you want to keep that?"

■■ Under Supreme Court Rule 133(b), a party pleading a judgment or court order need only state the date of its entry, describe its general nature, and allege generally the judgment or decision was duly given or made. (107 Ill. 2d R. 133(b).) Once a party properly pleads a previously entered court order, Rule 133(b) allows the court to take judicial notice of it, and production of the record of the prior trial court proceedings is not required. (See *Edwards v. City of Quincy* (1984), 124 Ill. App. 3d 1004, 464 N.E.2d 1125.) The trial court should take judicial notice of closely related judicial proceedings. See generally *Dandridge v. Northern Trust Co.* (1920), 218 Ill. App. 138 (in garnishment proceedings, trial court should take judicial notice of all that has previously transpired in the case).

In this case, the date of entry of the order appointing Goad administrator of Steven's estate and its general nature are stated in the copy of the order attached to Goad's first-amended complaint. Furthermore, Goad's first-amended complaint states Goad is the "duly appointed, qualified and acting" administrator of Steven's estate.

Because a photocopy of a certified copy of the letter of administration issued to Goad is the only document attached to Goad's first-amended complaint, it is rather obvious the document referred to in the above-quoted exchange between the court and counsel was the letter of administration appointing Goad administrator of Steven's estate. Also, the administration of Steven's estate and the present case are closely related in that it is highly unlikely Goad would have requested issuance of a letter of administration in the absence of her claims against Cole and Evans.

■■ If under these circumstances the circuit court did, in fact, refuse to take judicial notice of the letter of administration which appointed Goad administrator of Steven's estate, its refusal to do so was error. We therefore hold the judgment entered in this cause is not subject to reversal because of Goad's alleged failure to present sufficient evidence of her appointment to the office of administrator of Steven's estate.

## II

Cole next contends under the facts of this case, Goad is not, as a matter of law, entitled to recover on a theory of negligent entrust-

ment. Cole asserts, generally, recovery on the theory of negligent entrustment is available only to a third party who is injured as a result of the defendant's negligent entrustment of a dangerous instrumentality to another, and is not available to a person in Steven's position, who was himself killed as a result of the defendant's negligently entrusting a dangerous object to him. Cole also maintains there can be no liability on a negligent entrustment theory in this case because Steven's intoxication was a proximate cause of the fatal accident.

Goad contends Cole has waived this argument, because the case was submitted to the jury on a general form of verdict without special interrogatories, and Cole does not assert the evidence is insufficient to support the counts of Goad's complaint charging Cole with ordinary negligence.

In his reply brief, Cole asserts that in closing argument, Goad's counsel in effect conceded Cole was not driving Cole's father's vehicle at the time of the fatal accident and thus limited the relief available to Goad to a recovery on the negligent entrustment theory only.

The record does not support the conclusion Goad waived her reliance on the ordinary negligence theory during closing argument. As Cole points out, Goad's counsel did state in his rebuttal closing argument:

> "Steve [Cole's attorney] talked about the presumption. Yes, the law does impose a presumption in this situation where you let a person have a car and that person is in a car when there is a collision, the law presumes that person is the driver of the car. But that is only a presumption and the question is whether under that presumption you believe Billy [Cole] was the driver or Steve was the driver. And it really doesn't make any difference so far as liability is concerned ***.
>
> * * *
>
> *** Keep in mind the thing that made this thing, this tragedy occur, the thing that made this tragedy possible, is the fact that Billy, charged with the responsibility of an adult, gave that car to his friend who was intoxicated and he knew that was the condition. Under those circumstances, I'm suggesting that a greater portion of the fault lies there."

However, in the opening portion of his closing arguments, Goad's counsel stated:

> "Counts [III] and [V] are based upon the theory that Billy [Cole] was driving and that he was negligent in the handling of the car. You have to sort out which of those facts are true on the basis of the evidence that you heard.

It would have been far better had we had an eyewitness, had we had someone who could have seen who was driving and what occurred, but unfortunately, that isn't the situation. And so what we have to do is to take the physical facts and circumstances that we have and any other evidence and piece together a determination of what really happened on the morning of July 7, 1984.

\*\*\* I hope it doesn't surprise you when the Court tells you what I have told you, and that is that the Complaint is in four Counts, and we alleged in the alternative that either Billy or Steve was driving. Regardless of who it was, the responsibility rests on Billy for what occurred. It is the law that when a person entrusts an automobile to another person who is intoxicated, that is negligence. And under those circumstances, Billy would be responsible for this event if he did that.

\* \* \*

\*\*\* Listen to the instructions. Accept and follow the evidence and the instructions of the Court. With respect to Count [III], it is alleged that Billy was driving, that the driving was improper, that it was negligent and that as a result, Steve was killed. We have the statement from Billy after the occurrence. 'I shouldn't have let him drive.' 'I have killed my best friend.' There would be one situation in which you could find under Count [III] in favor of the plaintiff; that is, if you think that the statement was made up at the time of the occurrence. I don't know, and we don't know. That decision is up to you."

■ On the basis of his closing argument considered as a whole, it is obvious Goad's counsel emphasized the negligent entrustment theory rather than the ordinary negligence theory. However, counsel did indicate it was up to the jury to decide which theory was applicable to this case, based on its findings of fact. Counsel did not, therefore, waive Goad's right to recover on the ordinary negligence theory.

■ Cole, however, waived his right to contest the sufficiency of the evidence to support the negligent entrustment counts by failing to request submission to the jury of special interrogatories concerning the legal theory or theories on which the jury relied in arriving at its verdict. The jury returned a general verdict, finding for Goad and against Cole. The record contains no special interrogatories designed to elicit the legal theory or theories on which the jurors relied in reaching their verdict. Moreover, Cole does not assert the evidence is inadequate to support recovery by Goad on the ordinary negligence counts. Where, as here, the jury is instructed as to more than one

cause of action, and a general verdict results, the verdict must be sustained if there are one or more good causes of action to support it. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1201(b); *Moore v. Jewel Tea Co.* (1970), 46 Ill. 2d 288, 263 N.E.2d 103; *Peterson v. Henning* (1983), 116 Ill. App. 3d 305, 452 N.E.2d 135.) Since Cole does not dispute the sufficiency of the evidence to support the ordinary negligence counts and did not request special interrogatories, and Goad did not waive her right to recover on the ordinary negligence theory, it must be assumed the jury's verdict was premised on that theory. Under these circumstances, the possible failure of the evidence to support Goad's negligent entrustment counts would not provide a basis for reversal of the judgment entered on the jury's verdict, and we need not consider whether the evidence is sufficient to support recovery on those counts.

## III

Cole further asserts Goad is barred from any recovery because of primary implied assumption of risk on the part of Steven in driving while intoxicated. He also asserts if primary implied assumption of risk is an affirmative defense which must be specifically pleaded and proved, the trial court erred in denying him leave to amend his answer to assert that defense.

Goad maintains the circuit court did not abuse its discretion in refusing Cole leave to amend his answer to assert the affirmative defense of primary implied assumption of risk, considering the motion for leave to amend was filed on the last court date before trial and more than two years after the filing of Goad's original complaint. Goad also asserts the allegations contained in the proposed affirmative defense of assumption of risk, which Cole filed with his motion for leave to amend his answer, are conclusionary in nature. On the merits, Goad asserts the defense of assumption of risk is inapplicable to this case, because Steven did not expressly agree to assume the risk, and there was no contractual relationship between the Steven and Cole.

■ Primary implied assumption of risk exists when a plaintiff has assumed known risks inherent in a particular activity or situation. (*Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 481 N.E.2d 1037.) All varieties of the defense of assumption of the risk are available only in situations where express consent to assume risk or an employment or a contractual relationship is present. *Barrett v. Fritz* (1969), 42 Ill. 2d 529, 248 N.E.2d 111.

■ In the case at bar, there is no evidence, and there are no non-

conclusory allegations in Cole's proposed affirmative defenses, which would support an inference a contractual or employment relationship existed between Steven and Cole on the night of the fatal accident or Steven expressly agreed to assume the risk of riding in Cole's father's vehicle on that night. The doctrine of primary implied assumption of risk is not a bar to Goad recovering damages under the facts and circumstances of this case.

## IV

Cole next argues the circuit court improperly admitted and excluded various evidence.

## A

Prior to trial, the circuit court entered orders *in limine*: (1) prohibiting the introduction of evidence which would fall within the scope of the Dead Man's Act (Act) (Ill. Rev. Stat. 1985, ch. 110, par. 8—201) but for an exception to the Act, without the party seeking admission of the evidence first demonstrating to the court, outside the presence of the jury, the evidence was not within the scope of the Act; and (2) prohibiting the introduction of evidence Steven drove a motor vehicle on any occasion prior to July 7, 1984.

On the morning of the second day of the trial, the court granted an oral motion *in limine* by Goad, which requested Cole be prohibited from introducing evidence of consumption of alcoholic beverages by Steven more than one week prior to the fatal accident, unless the evidence described drinking to such an extent it demonstrated habitual intoxication, alcoholism, or alcohol abuse. Immediately thereafter, Goad admitted Steven was intoxicated at the time of the fatal accident. On the basis of this admission, the circuit court entered a further order *in limine* prohibiting Cole from introducing evidence concerning consumption of alcohol by or intoxication on the part of Steven on the night of the fatal accident.

Cole contends generally the circuit court's orders *in limine* unduly restricted his presentation of his case and precluded him from presenting a "valid defense." Specifically, Cole asserts Goad's admission concerning Steven's intoxication on the night in question was a substitute for testimony as to this point and thus "opened the door" to admission of testimony concerning Steven's intoxication on that night. In support of this contention, Cole argues Steven's intoxication is part of the event on which Goad's negligent entrustment counts are premised, and evidence pertaining to Steven's intoxication was relevant to whether Cole knew of Steven's intoxication and in turn, to

Cole's knowledge concerning whether Steven was capable of operating a motor vehicle in a safe and responsible manner on the night of the fatal accident. Also, Cole contends testimony by Steven's father, Claude Goad, Steven was not a licensed driver, testimony on the part of Carol Bridges, Cole drove Cole's father's car while he and Steven were in her presence on the evening before the accident, and testimony by Mike Giesler to the effect Steven never drove Cole's father's car while in his presence, "opened the door" to evidence concerning who was driving Cole's father's car at the time of the fatal accident.

Furthermore, Cole argues the orders *in limine* prevented him from introducing evidence inconsistent with Goad's theory of the case as well as evidence relevant to his own theory of the case. Specifically, Cole argues the circuit court improperly excluded evidence Steven had driven Cole's father's vehicle one week prior to the fatal accident, and Steven had driven motor vehicles for some time prior to the accident. Cole additionally argues the circuit court improperly excluded evidence of Steven's blood-alcohol content at the time of the accident.

Cole also complains the circuit court's orders *in limine* improperly prevented him from presenting evidence Steven had consumed alcoholic beverages on occasions prior to the fatal accident and that one week before the accident, Steven attended an all-night beer party, became intoxicated, and drove the same vehicle which was involved in the accident. Cole asserts evidence of Steven's prior alcohol use was relevant to determination of the amount of Goad's damages for loss of Steven's society and companionship and may have been a basis for the mitigation or negation of various elements of damages. Cole asserts exclusion of this evidence gave the jury of a one-sided picture of Steven.

Cole further argues the circuit court erred in admitting (1) testimony on the part of Mike Giesler that on the evening in question, Cole responded to a request of Steven to drive Cole's father's car, that if he allowed Steven to drive and there was an accident, it would be his (Cole's) fault instead of someone else's; and (2) testimony by David Curry that at the scene of the accident, Cole stated he had killed his best friend. Cole contends these statements were inadmissible because a nonexpert witness cannot be impeached or discredited by his prior conflicting testimony. Cole argues in the alternative, if these statements were properly admitted, they opened the door to testimony by Cole under the Dead Man's Act.

Goad first contends in failing to make offers of proof with regard to his proposed testimony, Cole waived any errors in the circuit

court's refusal to admit it. Goad also maintains an admission of a fact, such as her admission Steven was intoxicated at the time of the fatal accident, is not the equivalent of testimony as to that fact, which "opens the door" to testimony which is otherwise barred by the Dead Man's Act. She maintains in this case, there was no testimony which waived the protection of the Dead Man's Act.

Goad asserts evidence of Steven's prior operation of motor vehicles was inadmissible, because the conduct of a person on a prior occasion is not relevant to establishing whether that individual acted in the same manner on a subsequent occasion. Goad further asserts evidence of Steven's prior consumption of alcohol is not relevant to the question of the damages which she sustained as a result of her loss of Steven's society and companionship, because there is no evidence Steven's use of alcohol diminished the quality of the relationship between her and Steven. Goad notes admission of evidence of the use of alcoholic beverages, standing alone, has generally been deemed highly prejudicial and reversible error.

With respect to the testimony of Giesler and David Curry concerning Cole's statements before and after the accident, Goad contends Cole waived his objections to this testimony by failing to object to it at trial. On the merits, Goad contends this evidence was competent, because it constituted admissions which were contrary to Cole's position at trial.

In his reply argument, Cole states his contentions concerning improper exclusion of evidence should not be deemed waived due to his failure to submit offers of proof, because during the course of the trial, the circuit court indicated it did not want to be bothered with further offers of proof, indicated general impatience with the slow progress of the trial, and provided some basis for Cole's counsel's believing he would be held in contempt of court if he persisted in attempting to make further offers of proof. Also, Cole maintains evidence concerning Steven's prior driving of motor vehicles was relevant for the purpose of rebutting the presumption presented to the jury Cole, as the vicarious owner of the vehicle involved in the fatal accident, was driving it at the time of the accident, and for the purpose of countering the probative force of the evidence Steven was not a licensed driver.

Finally, Cole contends he did not waive his objections to Curry's and Giesler's testimony concerning Cole's statements before and after the accident. He notes the circuit court denied a motion *in limine* to exclude this testimony, and asserts, therefore, no objections at trial were necessary in order to preserve his objections to this evidence.

We agree Cole has preserved for review all of the alleged evidentiary errors which he alleges. The following exchange occurred when Cole's counsel indicated his intention to provide offers of proof as to some of the evidence which was excluded under the orders *in limine*:

"THE COURT: Your motions were made on the record and we have a record of what they were and what the evidence consisted of that was the subject of the motion in limine and the reasons for the ruling. Now, what would be accomplished in another offer of proof if it is going to cover the same turf that was covered in the motion in limine? It would be a waste of time, would it not?

MR. RYAN: If it is indeed covered.

THE COURT: Unless there is something different that you want to bring up at this time or authority that you have discovered in the meantime, I would say we have already disposed of things. I don't see any point in wasting more time with it. It's been considered. That's what I'm getting at.

MR. RYAN: I just don't want to waive, if it should go up on appeal.

THE COURT: It will be going up on appeal, Mike. Nearly all of may [*sic*] cases are appealed because of the erroneous conduct of the Court, but I think the Court has some obligation to move this case along and going over the same material twice is not consistent with moving the case and I have to insist that we abide by the rulings in the motion in limine and let it go at that.

MR. RYAN: Your Honor, I don't want—I don't want any appellate court calling and saying I waived anything. If I could tell Your Honor ***. ,

THE COURT: I think the record is replete with your efforts to get this matter in before the jury and the disposition of your efforts and I don't think you have any problem with regard to the record.

* * *

MR. RYAN: So I will understand, I should desist in making these offers of proof.

THE COURT: By all means. We will show your persistence in disposition of your offer."

■ Generally, an offer of proof is necessary in order to preserve for review the question of whether the trial court improperly excluded certain evidence. (*Buczyna v. Cuomo & Son Cartage Co.* (1986), 146 Ill. App. 3d 404, 496 N.E.2d 1116.) Where, however, the attitude of

the trial court is such as to prevent a party from presenting offers of proof, none are necessary in order to preserve for review the court's rulings which exclude evidence. *Giddings v. Williams* (1929), 336 Ill. 482, 168 N.E. 514.

■ The above-quoted comments by the court indicate an attitude of unwillingness to hear further offers of proof and general impatience with the progress of the trial, which for practical purposes prevented Cole from presenting offers of proof with respect to his proposed testimony. Therefore, it cannot be said Cole waived any errors in the circuit court's exclusion of evidence by failing to present offers of proof.

■ The record also supports Cole's contention he objected *in limine* to testimony by Giesler and Curry concerning Cole's statements on the night of the fatal accident. The circuit court appears to have denied Cole's motion *in limine* directed to this testimony on the basis the testimony was admissible under the rules of evidence, rather than for reasons having nothing to do with the rules of evidence, such as difficulty of compliance with an order *in limine*. Under these circumstances, no further objections on Cole's part were necessary in order to preserve his objections to the relevant portions of Giesler's and Curry's testimony. See *Department of Public Works & Buildings v. Roehrig* (1976), 45 Ill. App. 3d 189, 359 N.E.2d 752.

We next consider whether the circuit court improperly excluded evidence relating (1) to Steven's intoxication at the time of the fatal accident; and (2) to the issue of who was driving Cole's father's vehicle at that time. The Dead Man's Act provides in pertinent part:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, except in the following instances:

(a) If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." Ill. Rev. Stat. 1987, ch. 110, par. 8—201.

■ An admission is a substitute for proof of the fact admitted

and dispenses with the necessity for proof of that fact. (*Bartolomucci v. Clarke* (1965), 60 Ill. App. 2d 229, 208 N.E.2d 616.) The purpose of the Dead Man's Act is to prevent introduction of testimony concerning events or conversations which only a decedent might have been able to contradict. (See *In re Estate of Segur* (1972), 5 Ill. App. 3d 459, 283 N.E.2d 76; *Rouse v. Tomasek* (1935), 279 Ill. App. 557.) However, subsection (a) permits the decedent's representative to in effect waive the protection of the Dead Man's Act by presenting evidence concerning events which occurred in the presence of the decedent. When this occurs, subsection (a) precludes presentation to the trier of fact of a one-sided picture of the event by allowing the opposing party to present testimony concerning it.

In the present case, Goad's admission Steven was intoxicated at the time of the fatal accident was a substitute for testimony as to Steven's condition at the time of the central event on which Goad's claims are premised. This admission, standing alone, presents an incomplete picture of the circumstances at the time of that event. On the basis of this admission, the jurors may have assumed Steven was noticeably intoxicated, when in fact he may not have been so intoxicated his intoxication was readily apparent to others. Evidence relevant to this matter, including evidence as to Steven's blood-alcohol content, may well have been crucial in determining whether Cole entrusted his father's vehicle to Steven while knowing or having reason to know Steven was intoxicated. Exclusion of testimony as to this matter put Cole at a severe disadvantage in presenting his defense to Goad's negligent entrustment claims and was thus inconsistent with the purposes of the Dead Man's Act. (See *Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 406 N.E.2d 879.) For this reason, we hold the circuit court erred in refusing to allow Cole to present evidence as to Steven's intoxication at the time of the fatal accident.

The circuit court did not, however, err in refusing to admit evidence which purportedly related to the question of who was driving Cole's father's vehicle at the time of the accident. The testimony presented by Goad to the effect Steven was not a licensed driver and Steven did not drive Cole's father's car while in the presence of Carol Bridges and Mike Giesler did not amount to testimony concerning occurrences at the time of the fatal accident or the physical or mental conditions of the persons involved in the accident at the time of the accident. Thus, this evidence did not open the door to testimony as to who was driving Cole's father's vehicle when the fatal accident occurred. (See *Manning v. Mock* (1983), 119 Ill. App. 3d 788, 457 N.E.2d 447.) The same is true of Cole's statements before and after

the accident as related by Giesler and Curry.

■■ Although the circuit court erred in refusing to admit evidence concerning Steven's intoxication at the time of the fatal accident, this error does not require reversal of the circuit court's judgment. Cole does not contend this evidence was relevant to Goad's ordinary negligence theory of recovery, which was premised on the contention Cole, rather than Steven, was driving Cole's father's vehicle when the fatal accident occurred. As previously indicated, Cole did not request special interrogatories in order to determine which of Goad's theories of liability—negligent entrustment or ordinary negligence—the jury relied upon reaching its verdict. Therefore, in view of Goad attacking the sufficiency of the evidence to support the negligent entrustment theory of recovery, we must presume the jury's verdict was premised on the theory of ordinary negligence. Ill. Rev. Stat. 1987, ch. 110, par. 2—1201(d); *Moore v. Jewel Tea Co.* (1970), 46 Ill. 2d 288, 263 N.E.2d 103.

An early decision of the appellate court (*Southern Ry. Co. v. Drake* (1902), 107 Ill. App. 12) involved a situation similar to that here present, in which a jury returned a general verdict in favor of a plaintiff who alleged alternative theories of liability in multiple counts. The court held in such situations, errors relating to the admission of evidence which is not pertinent to all of the counts require reversal of the verdict in plaintiff's favor, unless it is clearly apparent from the record the jury's verdict was premised on a count to which the evidence which was the subject of the trial court's erroneous ruling did not relate.

We further recognize the supreme court stated in *Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Gage* (1918), 286 Ill. 213, 218, 121 N.E. 582, 584, "[t]he verdict of a jury is a unit, and where several issues in a cause have been submitted to a jury for trial, if a fatal error is committed as to any issue the verdict cannot stand." The *Gage* decision did not, however, address a situation involving evidentiary errors which pertained to only one alternative theory of recovery. Rather, the court made the above-quoted statement in discussing the question of whether it was necessary to introduce evidence as to all of the issues involved in a case, when the case is remanded with leave to introduce evidence as to only a single issue. The court held in such situations, it is not necessary to present evidence concerning issues other than those as to which the reviewing court granted leave to introduce additional evidence and implied in trial court proceedings of that type, failure to introduce evidence as to the other issues does not constitute fatal error as to those issues.

The courts of some other jurisdictions have adopted an approach to the applicability of the "one good count" rule different from that adopted by the *Drake* court. In Ohio, for instance, the record need not clearly show the jury relied on a theory of recovery unaffected by trial error, in order for a general verdict to be affirmed despite a trial error affecting less than all of two or more alternative theories of recovery. In cases of this type, Ohio courts have noted a general verdict is a favorable finding upon all issues, and in cases involving multiple counts, a finding for a party on any of them sustains the judgment rendered in his or her favor. In such cases, trial errors not shown to have affected the result are disregarded. *Swoboda v. Brown* (1935), 129 Ohio St. 512, 196 N.E. 274; *Remix v. Sisler* (1926), 24 Ohio App. 162, 156 N.E. 240.

We conclude the rule adopted by the Ohio courts represents the proper resolution of the problem of trial errors which are not claimed to relate to all of the plaintiff's alternative theories of recovery. By not requesting special interrogatories, by not arguing the counts alleging ordinary negligence on the part of Cole do not state causes of action, and by not arguing the evidence is insufficient to support a verdict in favor of Goad on those counts, Cole in effect stipulated the jury relied on the ordinary negligence theory in returning a verdict in favor of Goad. From this it follows the errors in the exclusion of evidence concerning Steven's intoxication on the night of the fatal accident, which on the basis of Cole's argument would have related only to the negligent entrustment counts, do not require reversal of the judgment entered on the jury's general verdict in Goad's favor. To the extent *Drake* indicates a contrary result, we decline to follow that decision.

■■ The circuit court also did not commit error in rejecting the evidence concerning the prior operation of motor vehicles on the part of Steven. Evidence of prior actions is inadmissible for the purpose of establishing an individual acted in the same manner on a subsequent occasion. (*Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 461 N.E.2d 946.) It is apparent Cole did not seek to introduce this evidence for a purpose other than establishing the probability of similar actions on subsequent occasions.

■■ We further hold evidence of Steven's consumption of alcohol and driving of Cole's father's vehicle during the weeks preceding the fatal accident was not relevant to determining the amount of Goad's damages for loss of Steven's society and companionship. A defendant may rebut the presumption of pecuniary injury stemming from loss of a deceased child's society by presenting evidence the deceased child

and his or her parents were estranged. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) In the present case, Cole contends only Steven's parents may have been dismayed and upset over prior incidents of intoxication and driving a motor vehicle on the part of Steven. These incidents, standing alone, do not suggest Steven and his parents were estranged. Absent indications Steven may have been estranged from his parents, the circuit court did not clearly abuse its discretion in refusing to admit this evidence.

■ Finally, the circuit court committed no error in admitting Cole's statements on the night of the fatal accident as related by Giesler and Curry. Statements by parties which are contrary to their positions at trial are admissions, which are admissible under an exception to the hearsay rule. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) Cole's statements to the effect (1) if he let Steven drive and there was an accident it would be Cole's fault and (2) he had killed his best friend are contrary to Cole's position at trial he was not in any way liable for Steven's death. As Cole points out, a nonexpert witness cannot generally be impeached by his prior conflicting opinions. (81 Am. Jur. 2d *Witnesses* §598 (1976).) However, Cole was not called as a witness in this case, and this rule is thus inapplicable to the testimony concerning Cole's statements on the evening in question.

B

In addition to the arguments concerning the purportedly improper admissions and exclusions of evidence which we have just discussed, Cole makes one more argument alleging the trial court improperly excluded evidence, which requires a brief summary of the testimony of witness Bonnie Carter and the circumstances of her appearing as a witness for Cole. An evidence deposition of Carter was scheduled to be taken in Monroe, Wisconsin, where she was residing at the time of the trial, on the evening before the first day of the trial. The subpoena for the proposed deposition was, however, quashed on the request of Goad on the same day it was to be taken. Although Carter was not subpoenaed, she voluntarily appeared and testified at the trial of this cause.

On the first day of the trial, Cole's counsel was informed Debbie Carter, a sister of Bonnie Carter, had been advised by one of Goad's attorneys, "they [Cole's attorneys] wouldn't need Bonnie Carter to testify because they had enough witnesses to testify for the trial." The circuit court refused to permit Debbie Carter to testify concerning her conversation with one of Goad's attorneys.

Bonnie Carter was one of the emergency medical technicians present at the scene of the accident in which Steven was killed. She testified concerning Cole's appearance and physical and mental condition at the time. She also testified that while in her presence on that night, Cole stated, "I shouldn't have let him drive," "He wanted to drive," and "I let him drive."

Cole asserts the circuit court erred in refusing to permit Debbie Carter to testify as to her conversation with Goad's counsel. He asserts evidence of this conversation was probative and relevant in the sense it would have enhanced the credibility of Bonnie Carter's testimony and may have amounted to an admission by or at least raised a presumption against Goad.

Goad acknowledges her counsel had a conversation with Debbie Carter, but denies her counsel told Debbie Carter Bonnie Carter would not be required at trial. Goad states if Debbie Carter related this purported statement on the part of Goad's counsel in good faith, it was attributable to a misunderstanding on her part. Goad asserts under the circumstances, it is simply implausible her counsel would have conducted himself in the manner which Debbie Carter described.

In his reply argument, Cole maintains the record does not contain a finding by the trial court this was simply a matter of a misunderstanding between Debbie Carter and one of Goad's attorneys. Furthermore, Cole asserts the jury, and not the trial judge, should have determined the weight to be accorded Debbie Carter's testimony.

As Cole points out, evidence of threats against witnesses, attempted intimidation of witnesses, attempted bribery of witnesses, and efforts to suborn witnesses are regarded as admissions by the parties who commit such acts, and evidence concerning such acts is therefore relevant and probative. (*People v. Gambony* (1948), 402 Ill. 74, 83 N.E.2d 321; *People v. Townsend* (1969), 111 Ill. App. 2d 316, 250 N.E.2d 169.) However, in the present case it is not at all clear one of the parties actually attempted to prevent a witness for an opposing party from testifying. The conclusion an attorney for Goad did not actually attempt to prevent Bonnie Carter from testifying is supported by the fact other individuals testified concerning Cole's appearance, condition, and statements at the scene of the fatal accident, and the absence of any indications counsel for Goad attempted to prevent any of those individuals from testifying. In view of the cumulative nature of Bonnie Carter's testimony, it simply is not logical to assume Goad's counsel would have risked all of the adverse consequences of making an improper attempt to prevent only her from testifying. Because of the improbability Goad's counsel would have made the state-

ment which Debbie Carter attributed to him, the circuit court did not commit reversible error in excluding Debbie Carter's proposed testimony.

## V

Cole next asserts the circuit court committed various errors in instructing the jury. Cole first maintains there is a conflict between two instructions which may have confused the jury. The first is plaintiff's instruction No. 10:

> "When I use the words 'ordinary care,' I mean the care a reasonably careful person would use under circumstances similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide."

(Compare Illinois Pattern Jury Instructions, Civil, No. 10.01 (2d ed. 1971) (IPI Civil 2d).) The second is defendant's instruction No. 11:

> "The standard of conduct of an adult and a minor differs in the application of the duty of ordinary care. However, a driver of a motor vehicle is held to the duty of ordinary care of an adult. Thus, the standard of conduct of the plaintiff's decedent and the defendant in exercising ordinary care will be different depending upon who you determine to have been driving the motor vehicle at the time of the accident. The duty of ordinary care of an adult is the care a reasonably careful person would use under circumstances similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide.
>
> The duty of ordinary care of a minor is the degree of care which a reasonably careful minor of the age, mental capacity and experience of the party who was the passenger at the time of the accident would use under circumstances similar to those shown by the evidence. The law does not say how such a minor would act under those circumstances. That is for you to decide."

Compare IPI Civil 2d Nos. 10.02, 10.05.

Goad acknowledges minors and adults are generally subject to different standards of care. She asserts, however, a minor who is charged with negligent operation of a motor vehicle should be held to the same standard of care as an adult. Goad argues because the jury could have concluded either Cole or Steven was operating Cole's father's vehicle at the time of the fatal accident, and Cole asserted a defense of contributory negligence, instructions concerning the stand-

ards of care applicable to both adults and minors were necessary.

As Goad notes, a minor who negligently operates a motor vehicle is held to the same standard of care as an adult. (*Betzold v. Erickson* (1962), 35 Ill. App. 2d 203, 182 N.E.2d 342.) Jury instructions should not contain unexplained contradictions, and instructions concerning the same subject matter which could result in different verdicts, depending on which instruction the jury follows, are improper. *Gilmore v. Fuller* (1902), 198 Ill. 130, 65 N.E. 84.

The two instructions of which Cole complains do not directly contradict each other. The first instruction simply gives a general definition of the term "ordinary care." The jury is informed the term denotes the care a reasonably prudent person would use under circumstances similar to those shown by the evidence. The second instruction in effect advises the jury the actions of a minor who was not driving a motor vehicle must be judged by the standard of care which a reasonably careful person of the minor's age, mental capacity, and experience would have utilized under the circumstances. In other words, the second instruction elaborates upon and qualifies the first instruction by specifying the age, mental capacity, and experience of a minor are among the factors relevant to determining the standard of care applicable to that minor.

■■ Goad's request for damages on the basis of two alternative theories of recovery, which were based on alternative assumptions as to who was driving Cole's father's vehicle at the time of the accident, and the presence of the issue of contributory negligence, created the possibility the jury would need to apply the standard of care applicable to minors. Therefore, instructions as to the standards of care applicable to both adults and minors were necessary.

Cole next contends the circuit court erred (1) in failing to instruct the jury to reduce the amount of Goad's damages by the amount of probable future child-rearing expenses which Goad would have incurred had Steven not been killed, and (2) in not instructing the jury Goad's pecuniary damages for loss of Steven's society and companionship were to be reduced to their present value. Cole contends the circuit court's failure to so instruct the jury resulted in an erroneous and excessive verdict.

Goad maintains the circuit court did not err in refusing to instruct the jury to consider her probable future child-rearing expenses, because insufficient evidence was presented as to the amount of such expenses. Goad also argues the circuit court acted properly in not instructing the jury to reduce her damages for loss of Steven's society and companionship to their present value, because such damages are

subjective and not easily quantified.

In his reply argument, Cole contends by their nature, child-rearing expenses "are not liquidated damages" and in this case, the jury could have determined the approximate amount of Goad's future child-rearing expenses by applying its own observations and experiences in the affairs of life.

Reductions of damage awards to account for probable future child-rearing expenses must be based on evidence presented to the trier of fact. (*Bullard*, 102 Ill. 2d 505, 468 N.E.2d 1228.) Illinois cases prior to *Bullard* do not support the conclusion the calculation of probable future child-rearing expenses may be based on the observations and experiences of the trier of fact in the affairs of life. For instance, in cases where the plaintiff seeks damages for loss of future earnings, there must be some evidence as to the specific amount of the lost future earnings in order for the plaintiff to recover this element of damages. (See *Freehill v. De Witt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52; *Levinthal v. Chicago Transit Authority* (1951), 345 Ill. App. 185, 102 N.E.2d 545 (abstract of opinion).) Moreover, the courts of other jurisdictions have held defendants in wrongful death actions are entitled to reductions in the damages award to account for the future cost of supporting the decedent only where evidence as to the reasonable cost of future support is presented. See, *e.g.*, *Grand Trunk Western Ry. Co. v. Gilpin* (7th Cir. 1913), 208 F. 126 (applying Michigan law).

██ In the present case, the only evidence touching on the matter of future support for Steven is testimony by Steven's father to the effect he and Goad provided Steven with clothing, food, and shelter. Because there is no evidence as to the cost of these items, the circuit court did not err in failing to instruct the jury to reduce Goad's damages by the amount of future support which she would have provided Steven.

In *Lorenz v. Air Illinois, Inc.* (1988), 168 Ill. App. 3d 1060, 522 N.E.2d 1352, the court rejected a contention damages for loss of society should be reduced to their present value. The court noted IPI Civil 2d Nos. 34.02 and 34.04 have long made it clear future, noneconomic losses for such things as pain and suffering, disfigurement, and disability are not to be reduced to present value. Cole advances no arguments which convince us *Lorenz* was wrongly decided. We therefore follow the *Lorenz* decision and hold the circuit court properly refused to instruct the jury to reduce Goad's damages for loss of Steven's society and companionship to their present value.

## VI

Cole's final contentions concern allegedly improper remarks made by Goad's attorney during closing argument. In the first statement of which Cole complains, Goad's counsel stated:

> "We have admitted to you that Steve was intoxicated. Unfortunately, Billy [Cole] has yet to face up to the situation. *** The law says that Billy was intoxicated, but still he hasn't accepted that responsibility nor admitted that fact. *** You know as well as I that these boys did not drink responsibly, and I am suggesting to you that Billy is still attempting to dodge his responsibility here today and we are going to ask you in your verdict to help him to face that responsibility."

Cole contends in making this statement, Goad's counsel improperly requested the jury punish Cole for his conduct. Cole states in the absence of a claim for punitive damages, this argument was an improper appeal to the jury.

Cole also complains of the following portion of Goad's counsel's closing argument:

> "In voir dire you were all asked if you drove cars, and I'm sure everyone here drives a car. If we were talking about the loss of a car, not one of you would hesitate to award thousands of dollars to replace a car that was totally destroyed. We hear of race horses worth hundreds of thousands of dollars. At least making hundreds of thousands every day. And here is a young man. We are here talking about the life *** ."

Cole asserts in so arguing, Goad's counsel disregarded the proper measure of damages, urged the jury to award damages based on improper comparisons to property and property values not in evidence, asked the jury to award damages for loss of life itself, and "introduced elements not germane to these proceedings."

Furthermore, Cole contends the following statement by Goad's counsel during closing argument disregarded the elements of foreseeability and proximate cause:

> "It is the law that when a person entrusts an automobile to another person who is intoxicated, that is negligence. And under those circumstances, Billy [Cole] would be responsible for this event if he did that."

Finally, Cole contends Goad's counsel prejudiced and inflamed the jury by repeatedly referring to Steven as a "15-year-old intoxicated boy."

Cole notes the circuit court overruled objections to most of the above portions of Goad's counsel's closing argument. He asserts individually and by their cumulative effect, these portions of Goad's clos-

ing argument denied him a fair trial.

Goad maintains the portion of her argument which asked the jury to help Cole face his responsibility was only a statement Cole had denied liability, which requested the jury to find Cole liable. She states there was no suggestion of punishment in her closing argument. Goad also contends use of the analogy to a race horse in her closing argument was not clearly improper or prejudicial to the point of requiring reversal of the judgment in her favor. Goad implies this was legitimate argument as to the compensation which she believed she should be paid for her losses.

In his reply brief, Cole asserts neither the worth of cars nor the value of race horses was among the subject matter of or the evidence involved in the present case. Cole contends the elements of and issues involved in claims for losses of cars or race horses are entirely different from those involved in a claim for loss of a child's society in a wrongful death action. He asserts the former types of losses have nothing to do with determination of the amount of fair compensation under the facts of this case. Cole maintains the portions of Goad's closing argument of which he complains cannot be considered harmless error, especially when it is considered Goad argued race horses are worth several hundreds of thousands of dollars, and the jury assessed Goad's damages at $220,000.

██ The statement suggesting the jury help Cole face his responsibility did not amount to a request the jury award damages for the sole purpose of punishing Cole. Rather, that statement suggested the jury hold Cole responsible only for the damages which were caused by his negligent conduct on the night of the fatal accident and to which Goad is by law entitled. In *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 439 N.E.2d 1284, the sole authority on which Cole relies in support of his contention as to this portion of Goad's closing argument, the court held there was no prejudicial error in the closing arguments.

The statements Steven was "a 15-year-old intoxicated boy" also did not constitute improper argument. Steven was a minor at the time his death, and Goad admitted Steven was intoxicated at the time of his death. Thus, unlike in *Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 360 N.E.2d 1324, on which Cole relies, this argument was not a misstatement of the evidence.

We have previously held we must presume the jury's verdict was based on the ordinary negligence counts of Goad's complaint rather than on the negligent entrustment counts. We need not, therefore, consider whether the portion of Goad's counsel's closing argument re-

lating to the entrustment of an automobile to an intoxicated individual was prejudicial error.

We lastly consider whether the portion of Goad's counsel's closing argument which mentioned losses of cars and the worth and earnings of race horses requires reversal of the circuit court's judgment. Counsel may suggest the amount of a total monetary award for intangible losses such as pain and suffering. (*Caley v. Manicke* (1962), 24 Ill. 2d 390, 182 N.E.2d 206.) Thus this portion of Goad's closing argument was proper to the extent it suggested the appropriate amount of Goad's damages for loss of Steven's society and companionship. However, this argument was improper to the extent it suggested Goad's losses were equivalent to the losses sustained by the owner of a destroyed car or were equivalent to the value of a race horse. The focus of the jury's deliberations should have been on the losses which Goad sustained as a result of the death of her son Steven, rather than on the losses sustained by the owners of destroyed automobiles or the worth of race horses.

We conclude, however, the above portion of Goad's closing argument does not require reversal of the circuit court's judgment. Cole's contentions regarding the error in this argument were brought to the attention of the circuit court in Cole's post-trial motion, and the circuit court was in the best position to judge the effect of this argument on the jury. Its ruling this argument did not constitute prejudicial error is entitled to great weight and will not be lightly disturbed on appeal. (See *Johnson*, 108 Ill. App. 3d 994, 439 N.E.2d 1284.) Moreover, the size of the jury's verdict does not convince us this portion of Goad's closing argument caused the jury to disregard the evidence and return an excessive verdict in Goad's favor.

The judgment of the circuit court is affirmed.

Affirmed.

LUND and SPITZ, JJ., concur.